In the Matter of the Estate of FLOYD L. JACKSON, Deceased. ENDICOTT TRUST COMPANY, Petitioner; THOMAS D. JACKSON, Appellant; ANGELOS P. ROMAS et al., Respondents.

Third Department, November 26, 1986

## APPEARANCES OF COUNSEL

*E. David Duncan* for appellant.

*Angelos P. Romas,* respondent *pro se.*

*Salvatore A. Fauci* for Clyde Barnes, respondent.

*Ball & McDonough, P. C. (Thomas M. Christina* of counsel), for John P. Ayres and another, respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

The last will and testament of Floyd L. Jackson created a trust for the benefit of Thomas Dean Jackson, a respondent in this proceeding seeking judicial settlement of accounts of the

trustee of that trust. Under the terms of the trust Jackson was to receive income and such portions of the corpus as the trustee in its discretion deemed proper for his support, maintenance, education and general welfare. Upon Jackson's 25th birthday he was to receive one half of the corpus of the trust, with the balance to be paid when he reached age 35. Jackson was born on November 7, 1948. He reached his 25th birthday in 1973, at which time he received 1,484 shares of IBM stock, valued at $409,584. Upon reaching his 35th birthday, Jackson became entitled to the balance of the trust fund consisting of 5,270 shares of IBM stock,[1] valued at $643,598.75. Jackson's remainder interest was subject to several liens and assignments which are the subjects of this proceeding.

In December 1983, petitioner, Endicott Trust Company, as trustee of the Jackson trust, filed a voluntary accounting of the trust. Jackson filed objections. Subsequent to a trial of these objections, Surrogate's Court (1) entered a decree judicially settling the trust which included an award of $286,080.95 to respondent John P. Ayres, (2) made an order, *inter alia,* awarding respondent Angelos Peter Romas 200 shares of Jackson's IBM stock and $15,000, and (3) by order awarded $37,747 to respondent Clyde Barnes. Jackson has appealed from the decree as well as the two orders. Since the operable facts in each appeal are distinct, each case is considered separately.

## John P. Ayres

In May 1978, Ayres and his wife loaned $100,000 to Jackson's business, T.D. Jackson Construction Company, Inc. Jackson and his wife personally guaranteed the corporate loan. Further, Jackson secured his guarantee by the issuance of a promissory note which, in part, stated: "In the event of the default of any payment of principal *or interest * * * the unpaid accumulated interest shall be added to the outstanding principal balance establishing a new principal balance to be computed with interest* at the rate of Twelve Percent (12%) per annum from the date said interest was otherwise due and payable. Obligees waive right of collection action until November 7, 1983, by reason of default in payment of required interest" (emphasis supplied). The note was structured so that interest payments were due the first day of May each year and the balance of the principal and any accumulated interest

---

1. There had been a stock split in the meantime.

were due on November 7, 1983, Jackson's 35th birthday. However, since Ayres had waived any right of collection action until November 7, 1983, Jackson had complete discretion either to make interest payments when they became due or to wait and, pursuant to the terms of the promissory note, have such interest added to the principal. Jackson chose not to make the interest payments as they became due. On June 22, 1979, a second note in the amount of $25,000 was executed between the same parties which was consolidated with the first note to constitute one note of $138,710. That total represents the principal of $125,000 together with the unpaid interest of $13,710 which remained unpaid at the time the consolidated note was signed. The disputed language of the first note was also present in the consolidated note. As with the first note, Jackson made no interest payments on the consolidated note.

■ In this proceeding, Jackson argues that since the language of the consolidated note mandates that unpaid accumulated interest be added to the outstanding principal creating a new principal balance which is subject to 12% interest, such a mechanism results in compound interest which, in the absence of an express agreement for either compound interest, or interest on interest, is violative of public policy (see, 32 NY Jur, Interest and Usury, § 9, at 21-23 [1963]). Thus, Jackson insists that such interest is not recoverable and Ayres is only entitled to simple interest. We disagree.

While it is true that the compounding of interest is not, by itself, usurious, it is also true that agreements to pay compound interest have not found favor with the courts (see, Giventer v Arnow, 37 NY2d 305, 308). This general rule, however, has no application to the facts of this case. Here, there was no agreement between Ayres and Jackson that the latter should pay compound interest. To the contrary, since Ayres waived the right of collection until the note's date of maturity, Jackson was free to choose between making interest payments as they became due, thereby making compound interest impossible, or waiting until the date of maturity, in which case such unpaid interest would be added to principal and additional interest computed upon that new sum. Where, as here, a debtor has the option of not paying interest until the principal balance is due, a provision for "compounding" interest is actually just a legitimate method of computing lawful interest. Such a method " 'only secures to the creditor a remuneration for that which he has lost' " (Giventer v

*Arnow, supra,* p 308, quoting *Stewart v Petree,* 55 NY 621, 623).

### CLYDE BARNES

On January 23, 1980, Barnes loaned Jackson $10,000 secured by a note which provided for interest at the rate of 21.6% per annum. On or about April 14, 1980, Barnes loaned Jackson $3,000 evidenced by a note which also provided for a rate of interest at 21.6% per annum. Again, in May 1980, Barnes loaned Jackson $2,000 evidenced by a receipt which required a similar rate of interest. Also, from the record, it appears that there were additional loans for which there is no documentation.

In January 1981, Barnes and Jackson decided to consolidate all of Jackson's indebtedness to Barnes into a single promissory note. Such note was to be supported by Jackson's interest in the trust. Jackson signed a promissory note for $24,759, payable on Jackson's 35th birthday. Said note was calculated with an annual interest rate of 16%. Jackson's total indebtedness to Barnes was calculated to be $37,747. Jackson then executed an assignment of his interest in the trust to Barnes.

At the proceeding for the judicial settlement of the accounts of the trustee, Jackson attempted to show that the underlying loans were usurious and that, therefore, the consolidated promissory note and collateral assignment were null and void. Surrogate's Court found that the note and assignment were valid. We agree.

While it is true that the usurious nature of a contract or obligation is to be determined as of the time it is entered into, and an obligation void at its inception for usury continues void forever, it is also true that if the parties to a usurious contract or obligation agree to abandon the void agreement and execute a new obligation for the amount of the actual debt, free from usury, and bearing only legal interest, then the second agreement purges the first of its usurious taint and makes the second obligation valid and enforceable *(see, Weaver Hardware Co. v Solomovitz,* 235 NY 321; 32 NY Jur, Interest and Usury, § 95, at 164 [1963]).

Here, Jackson acknowledged that he owed Barnes $24,759 and signed a promissory note for that amount, which represented the sum of all prior loans between the parties bearing an admittedly usurious rate of 21.6%. This second note bore interest at 16%, concededly a legal rate of interest, and when

calculated to the date of Jackson's 35th birthday the total indebtedness to Barnes was $37,747, the exact amount Surrogate's Court ordered that Jackson pay Barnes.

Since usury must be proved by clear evidence as to all its elements and will not be presumed *(see, Hammelburger v Foursome Inn Corp.,* 54 NY2d 580, 594; *see also, Freitas v Geddes Sav. & Loan Assn.,* 63 NY2d 254, 261), we hold that Jackson has failed to prove that the consolidated note and assignment were void because of usurious intent.

### Angelos Peter Romas

Next, we turn to the claims made by Romas, an attorney who represented Jackson in numerous matters from 1968 to 1981. Romas had not billed Jackson for his services. In April 1978, Romas and Jackson entered into an agreement whereby Jackson would assign to Romas a portion of the corpus of the trust as payment for legal services rendered from 1968 to 1978. The amount agreed upon was 200 shares of IBM stock. As discussed earlier, the remainder of the corpus of the trust would become available to Jackson in 1983. At the same time, Jackson assigned his interest in the remainder of the corpus of the trust to Romas as security for any indebtedness to be incurred in the future. Romas continued to represent Jackson over the next three years. Jackson made two subsequent assignments of stock from the corpus of the trust to Romas, one as security for a loan and another as payment for a specific bill for legal services. On June 8, 1981, Romas drafted a document listing the matters in which he performed legal services for Jackson from June of 1978 to June of 1981. The document states that Romas spent a total of over 500 hours on these matters and that $32,500 was a fair and reasonable fee. Jackson signed the document and acknowledged both the fact and the amount of the indebtedness.

Surrogate's Court resolved five separate claims made by Romas. Jackson has appealed, but his challenge is limited to two of the court's holdings.[2] First, the court enforced the assignment of 200 shares of IBM stock[3] as payment for legal services. Second, for the claim for $32,500 in legal fees for the June 1978 to June 1981 period, the court allowed $15,000.

---

2. Romas also received 72 shares of IBM stock by assignment for other legal fees (18 shares increased by a 4 to 1 stock split); 48 shares of IBM stock for his guarantee of a loan (12 shares increased by the stock split); and $421.95 as the remaining principal due on a loan.

3. Due to the 4 to 1 stock split, 800 shares are now at issue.

We begin by noting that we are highly critical of the manner in which Romas kept track of the fees for the legal services he performed for Jackson. During most of the period of the attorney-client relationship, Jackson did not have significant income, though he had the expectation of receipt of the corpus of the trust. Certainly Romas was entitled to payment for his services and assignment of Jackson's interest in a portion of the corpus of the trust was a fair and reasonable method of securing payment. However, Romas was extremely lax in keeping accurate records of the specific legal services performed, the time spent on those services and the billing rate. Rather, he occasionally "settled up" with Jackson for past services. Courts exercise control over fee arrangements between attorneys and their clients as a matter of public policy, and the attorney has the burden of proving that the contract is fair, reasonable and fully known and understood by the client (see, *Jacobson v Sassower*, 66 NY2d 991, 993; *Smitas v Rickett*, 102 AD2d 928, 929). An attorney has an ethical obligation to advise his client of the fee arrangement and to keep records which are sufficiently accurate and detailed to calculate the fee and, should the matter reach litigation, to allow a court to determine whether the fee is reasonable and fair. The sort of informal approximation of legal fees involved in the instant case draws our close scrutiny.

■ Dealing first with the outright assignment of 200 shares of IBM stock from the corpus of the trust, we hold that Surrogate's Court properly upheld the assignment. The evidence in the record makes it clear that Romas had performed significant legal services for Jackson for some time. Further, both the assignment and the specific number of shares were matters of negotiation between the parties. The evidence indicates that Jackson secured the opinion of independent counsel or at least led Romas to believe that he had. Lastly, there is sufficient proof in the record dealing with the extent of the services rendered and the value of the stock at the time of the transfer so that we can conclude that the arrangement was fair and reasonable.

Turning to the award of $15,000 in legal fees, it is clear from the record that Romas did indeed perform legal services for Jackson during the period of June 1978 to June 1981. However, it is impossible from the evidence presented to verify the fee claimed, much less determine whether it is reasonable. Romas simply presented a document, which was

not contemporaneous with the legal services, which listed by title the matters in which he performed legal services for Jackson. He did not specify what services were performed, how much time was expended or what hourly rate was charged. The document simply concluded that over 500 hours were expended and that $32,500 was a reasonable fee. Surrogate's Court found that this proof was not sufficient to support the claim but allowed a $15,000 fee. We agree that the proof was insufficient and, further, find that the award of $15,000 is not justified.

Romas had the burden of proving the amount of legal fees due him. As an attorney he also had to demonstrate that such fee was fair and reasonable. He did not satisfy this burden by simply proving the number of matters he worked on for Jackson and giving, at best, an approximation of the fees being claimed. The fact that Jackson signed the document and acknowledged the indebtedness is of no moment. Since the document provides almost no information necessary to determine a reasonable fee, the client's agreement could in no way have been fully known and understood. Inasmuch as attorneys are held to the highest standards when dealing with clients over fee matters, far more probative proof is required than was presented here. Our review of the record reveals only one item of proof of sufficient probative value to support a fee. A letter dated June 28, 1979 spells out the actual services performed, time expended and hourly rate in connection with one particular matter. It sets a fee of $1,300. There is no proof in the record to controvert this bill. This $1,300 is the extent of the claim for legal fees which will be allowed. Therefore, the award to Romas must be so modified.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Decree affirmed, without costs.

Order in file No. 81-819 regarding respondent Clyde Barnes affirmed, without costs.

Order in file No. 2994 regarding respondent Angelos Peter Romas modified, on the law, without costs, by reducing the award of $15,000 to $1,300, and, as so modified, affirmed.