**Kin Cheung WONG, Plaintiff,**

v.

**MICHAEL KENNEDY, P.C. and Michael Kennedy, Defendants.**

**No. CV–93–5519.**

United States District Court, E.D. New York.

May 23, 1994.

---

Edward I. Sussman, New York City, for plaintiff.

Michael Kennedy, New York City, for defendants.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:

Plaintiff Kin Cheung Wong ("plaintiff" or "Mr. Wong") moves the court pursuant to Fed.R.Civ.P. 56, seeking an order (1) granting him partial summary judgment in the amount of $75,000, and (2) directing defendants Michael Kennedy, P.C. and Michael Kennedy ("defendants") to provide a complete accounting of certain funds he deposited in escrow with them. For the reasons described below, the motion for partial summary judgment is granted to the extent that the court declares unenforceable the retainer agreement executed by the parties, and defendants are ordered to provide a more detailed accounting for a portion of the funds deposited in escrow.

*FACTS*

Plaintiff commenced this action by filing a Complaint on December 7, 1993; jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The underlying facts are as follows. In July 1990, plaintiff retained defendants to represent him in connection with a criminal proceeding captioned *United States v. Wong*, 89–CR–679 (ILG). Compl. ¶ 6. Plaintiff and defendants entered into a written retainer agreement (the "Retainer Agreement"), which provided that plaintiff would pay defendants a legal fee in the amount of $225,000 *"as and for all legal services rendered and to be rendered in connection with"* the litigation, "up to and including ten (10) weeks of trial." Affidavit of Edward I. Sussman in Support of Motion, Sworn to Apr. 15, 1994 ("Sussman Aff.") Ex. C (emphasis added). More specifically, the Retainer Agreement required that $75,000 of the fee be paid "immediately upon signing of this agreement," and that $150,000 be paid two weeks prior to the date of trial. Sussman Aff.Ex. C. In the event that the trial lasted more than ten weeks, the Retainer Agreement provided that Mr. Wong would pay "a weekly trial fee" of $12,500 per week up to and including fifteen weeks of trial, and a weekly trial fee of $10,000 should the trial last more than fifteen weeks. Sussman Aff. Ex. C. In addition, the Retainer Agreement, which bore the caption and docket number of the criminal proceeding, contained the following provision:

> It is further agreed and understood that KIN CHEUNG WONG is retaining the legal services of the law office of MICHAEL KENNEDY, P.C. for legal representation in the United States District Court for the Eastern District of New York under the above captioned present or superseding indictment. The legal fee does not include an appeal (either interlocutory or final) or retrial (through mistrial or otherwise) or any proceedings other than those immediately and normally attendant to this District Court action.

Sussman Aff.Ex. C.

The Retainer Agreement further provided that the legal fee did not include any expenses incurred in the defense of the criminal action, and that plaintiff would pay defendants an additional $10,000 upon the signing of the agreement, which funds were to be placed in escrow and used "as necessary" to defray expenses incurred on behalf of Mr. Wong and his co-defendants during the criminal proceeding. Sussman Aff.Ex. C. Finally, the Retainer Agreement stated as follows:

> In the event that the legal services of the law office of MICHAEL KENNEDY, P.C. are terminated by KIN CHEUNG WONG prior to trial, *any fee actually paid on or prior to the date of such termination shall be deemed earned and no part thereof shall be refundable.* ˙ If however, such legal services are terminated because of an unforeseen event, then KIN CHEUNG WONG agrees to be billed at the rate of TWO HUNDRED FIFTY DOLLARS (U.S.) ($250.00) per hour for services actually rendered.

Sussman Aff.Ex. C (emphasis added).

Defendants, who are appearing *pro se* in this matter, allege that the Retainer Agreement was entered into after extensive negotiations among defendants and three attorneys named Ronald Garnett, Lawrence Schoenbach and Dixon Tang (an attorney in Hong Kong), beginning in late May 1990. Affidavit of Michael Kennedy, Sworn to May 6, 1994 ("Kennedy Aff.") ¶ 1. Mr. Kennedy describes the negotiations more specifically as follows:

> I spent many hours during this time giving the Hong Kong lawyer information about myself and negotiating a retainer agreement. I was told that the case would definitely be tried and that no deal was possible. I was also told that the trial could last up to ten weeks. Mr. Wong wanted my assurance that I would personally try the case and not some associate. He also wanted my assurance that I had time to devote to pre-trial work: many meeting with clients at prison would be necessary, obtaining discovery, preparing motions, particularly, suppression, reviewing discovery with client, and possibly going to Hong Kong for investigation.

Kennedy Aff. ¶ 3. Accordingly, defendants allege that the $75,000 to be paid upon the execution of the Retainer Agreement was

understood by all parties—including Mr. Wong—to be a "general retainer" that was deemed "earned when paid." [1] Kennedy Aff. ¶ 5. Moreover, defendants allege, the $250 per hour figure provided in the Retainer Agreement was understood by all parties to be applicable only if Mr. Kennedy became unavailable due to an unforeseen event; the figure "was by no means intended as rate for the performance of legal services. On the contrary, the $250.00 rate was a reduction of [Mr. Kennedy's] prevailing hourly rate intended to compensate the client for [his] unavailability." Kennedy Aff. ¶ 5.

The Retainer Agreement ultimately was executed in July. Kennedy Aff. ¶ 4. It is undisputed that defendants received $75,000 upon the execution of the Retainer Agreement, in addition to the $10,000 to be placed in escrow. Defendants allege that they thereafter appeared on behalf of plaintiff at his arraignment on July 31, 1990, at which time a motion schedule was set for the month of September.[2] Kennedy Aff. ¶ 6. Defendants allege that they did extensive work during the month of August reviewing discovery and extradition materials, meeting with Mr. Wong and generally preparing for trial, Kennedy Aff. ¶¶ 6–8; plaintiff alleges that Mr. Kennedy met with Mr. Wong on only two occasions, and disputes that defendants expended time reviewing discovery materials because "this Court's records … show that Mr. Kennedy never filed any application for discovery." Sussman Reply Aff. ¶ 5.

In late September 1990, approximately two months after being retained, defendants were discharged by plaintiff. Sussman Aff. ¶ 5. Curiously, plaintiff does not explain his reasons for discharging defendants; he simply alleges that he retained Thomas Nooter, Esq. to represent him in the criminal proceeding. Mr. Kennedy alleges that upon being notified by Mr. Nooter that he had been discharged as counsel for Mr. Wong, he visited with Mr. Wong at Otisville. Kennedy Aff. ¶¶ 9–10. He alleges that Mr. Wong was "very apologetic," but told him that "Mr. Nooter and others had promised him … that they would be able to make a deal that would guarantee Mr. Wong little or no time in jail"; as Mr. Kennedy describes the conversation, "Mr. Wong said because they promised a good result and [Mr. Kennedy] could not promise, he had to go with them[.]" [3] Kennedy Aff. ¶ 11. Defendants further allege that Mr. Wong told Mr. Kennedy that he was "grateful for all [he] had done, that he expected no money back from [his] retainer and would not ask for any money back." Kennedy Aff. ¶ 12.

In May 1991, Mr. Nooter wrote to defendants to request an accounting, as well as the return of any unused portion of the $10,000 in escrow; Mr. Nooter represented that "although [Mr. Wong] feels he paid a huge sum for what turned out to be a very brief period of representation, [he is] not making any request for a return of fees at this time (pending the outcome of the request regarding the expense moneys)." *See* Sussman Aff. Ex. E. Mr. Kennedy alleges that in response, he "believe[s he] informed Mr. Noot-

---

1. Mr. Kennedy explains the fee structure as follows:

   I would never have agreed to represent Mr. Wong through a possible 10 week trial with extensive pre-trial work without a guaranteed general retainer, such as was executed here. Mine has always been a small 2–3 person firm. We must select our cases and make our commitments carefully. I committed several months of my time to Mr. Wong's defense. I passed up many other lucrative potential cases in order to be able to fulfill my commitment to Mr. Wong. I held up my end of the bargain. Kennedy Aff. ¶ 17.

2. Plaintiff disputes that Mr. Kennedy ever appeared personally before the court; he avers that

on the three occasions that a court appearance was required, an associate named Gregory Lenahan twice appeared for the firm of Michael Kennedy, P.C., and Lawrence Schoenbach appeared once. Reply Affidavit of Edward I. Sussman, Sworn to May 9, 1994 ("Sussman Reply Aff.") ¶ 3.

3. Mr. Kennedy avers that he told plaintiff that the promise made to him by Mr. Nooter was false and unethical, and that he forebore bringing ethics charges against Mr. Nooter and the other attorneys only because Mr. Wong pleaded with him not to do so. He maintains that "[a]t Mr. Wong's insistence, [he] consented to the substitution of Counsel and [he] eventually turned [his] files over to Mr. Nooter." Kennedy Aff. ¶¶ 13–14.

er that the entire $10,000.00 had been spent on expenses." Kennedy Aff. ¶ 16.

On September 23, 1993, plaintiff's counsel in the present matter requested from defendants an accounting of the escrowed funds, an itemized bill for services actually rendered on behalf of plaintiff based on the "agreed hourly rate" of $250, and a refund of any unearned portion of the legal fee received by defendants, as well as any undisbursed escrow funds. *See* Sussman Aff.Ex. F. In response, defendants wrote "[y]our letter of September 23 contains so many factual and legal inaccuracies that I am obliged to reject your representation that you have been 'retained' by Mr. Wong. I require written authorization from Mr. Wong before I will consider talking to you about this matter." *See* Sussman Aff.Ex. G. Defendants allege that they never received such authorization. Answer ¶ 10; Kennedy Aff. ¶ 16.

In addition, plaintiff alleges that defendants have failed to comply with discovery requests for documents concerning services rendered and time spent by defendants on behalf of plaintiff. Defendants submit that because so much time has passed, they are unable to reconstruct with precision the amount of time expended on Mr. Wong's behalf: Mr. Kennedy did not keep detailed time sheets while he actually was doing the work, but, according to Mr. Kennedy, "[h]ad Mr. Wong told [him] at the time of discharge that he wanted a refund, or an accounting, [he] would have been able to better recall from memory all [his] hours and the tasks performed." Kennedy Aff. ¶ 18. Defendants also allegedly have refused to provide documentation underlying "Exhibit C" to defendants' responses to the document requests, which purports to be a list of expenditures from the escrow account, and which states that "MKPC paid over & above the $10,000." *See* Sussman Aff.Ex. K. Defendants claim that they provided plaintiff with checks and bills underlying the disbursement of the escrowed funds in April 1994, effectively mooting plaintiff's application for an accounting. In reply, plaintiff alleges that the documents provided are inadequate because several of the checks submitted lack any corresponding

bills or other explanation justifying the expenditures. Sussman Reply Aff. ¶ 4.

By this action, plaintiff seeks "return of all sums paid to defendants less any amounts actually earned by defendants and a return of all funds which were to be escrowed on his behalf less any amounts actually and properly disbursed therefrom" on the grounds that the Retainer Agreement is void and unenforceable as against public policy, and the Retainer Agreement and defendants' failure to refund the fees violate various Rules of the Code of Professional Responsibility and constitute a breach of defendants' fiduciary duty. Compl. ¶¶ 14–26. Plaintiff now seeks partial summary judgment awarding him $75,000 and ordering defendants to provide an accounting of the escrowed funds.

## DISCUSSION

It is axiomatic that "[c]ourts have 'traditional authority ... to supervise the charging of fees for legal services under the courts' inherent and statutory power to regulate the practice of law.'" *520 E. 72nd Commercial Corp. v. 520 E. 72nd Owners Corp.,* 691 F.Supp. 728, 737 (S.D.N.Y.1988), *aff'd,* 872 F.2d 1021 (2d Cir.1989) (citation omitted). In this case, plaintiff argues that he is entitled to summary judgment because retainer agreements like the one utilized by defendants here are prohibited under New York law. Defendants, in turn, claim that there is a genuine dispute as to whether the $75,000 received from plaintiff was a "permissible general retainer or a prohibited special nonrefundable retainer." Defendants nonetheless ask the court to award summary judgment in their favor.

### I.

Plaintiff relies primarily on the recent decision of the New York Court of Appeals in *Matter of Cooperman,* 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994), as support for his argument. That case involved a disciplinary proceeding brought against an attorney who repeatedly used special nonrefundable retainer fee agreements with his clients. The Court of Appeals affirmed the order of the Appellate Division suspending the attorney from practice for

two years, finding that "special nonrefundable retainer fee agreements clash with public policy and transgress provisions of the Code of Professional Responsibility (see, DR 2–110[A][3]; DR 2–110[B][4]; DR 2–106[A] ), essentially because these fee agreements compromise the client's absolute right to terminate the unique fiduciary attorney-client relationship." *Id.*, 83 N.Y.2d at 471, 611 N.Y.S.2d at 467, 633 N.E.2d at 1071. The court remarked that this absolute right arises from the distinct nature of the attorney-client relationship, which implicates " '[t]he greatest trust between [people].' " *Id.* (*quoting* F. Bacon, Of Counsel, in The Essays of Francis Bacon, 181 (1846)). While the unqualified right to terminate the attorney-client relationship has been "assiduously protected by the courts," the attorney is not left without recourse because "[i]f a client exercises the right to discharge an attorney after some services are performed but prior to the completion of the services for which the fee was agreed upon, the discharged attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the completed services." *Id.*, 83 N.Y.2d at 472, 611 N.Y.S.2d at 468, 633 N.E.2d at 1072. Moreover, the court held, the fact that a particular nonrefundable fee may be reasonable "cannot rescue an agreement that impedes the client's absolute right to walk away from the attorney." *Id.*, 83 N.Y.2d at 474, 611 N.Y.S.2d at 469, 633 N.E.2d at 1073. The court concluded as follows:

> Since we decide the precise issue in this case in a disciplinary context only, we imply no views with respect to the wide array of factors by which attorneys and clients may have fee dispute controversies resolved. Traditional criteria, including the factor of the actual amount of services rendered, will continue to govern those situations (see, DR 2–106[B] ). Thus, while the special nonrefundable retainer agreement will be unenforceable and may subject an attorney to professional discipline, quantum meruit payment for servic-

es actually rendered will still be available and appropriate.

*Id.* In addition, the court noted that its holding was not intended to invalidate the "other types of appropriate and ethical fee agreements"; "[m]inimum fee arrangements and general retainers that provide for fees, not laden with the nonrefundability impediment irrespective of any services, will continue to be valid and not subject in and of themselves to professional discipline." *Id.*, 83 N.Y.2d at 476, 611 N.Y.S.2d at 470, 633 N.E.2d at 1074.

The dispute in this case turns on whether the $75,000 paid to defendants upon the execution of the Retainer Agreement was a special nonrefundable retainer fee agreement like that invalidated by the Court of Appeals in *Cooperman,* or a general retainer agreement, of the kind expressly left intact by that decision. A description of the different types of retainer agreements follows.

▇▇▇ A special retainer is an agreement between attorney and client pursuant to which the client contracts to pay a specified fee in exchange for specified services; the fee may be calculated on an hourly, percentage or other basis, and may be payable in advance or as billed. Lester Brickman and Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C.L.Rev. 1, 6 (1993) [hereinafter "Brickman"].[4] A nonrefundable retainer is a specific type of special retainer which allows an attorney to keep an advance payment regardless of whether the specified services are rendered. *Id.* at 8. It is this type of agreement that the Court of Appeals found invalid in *Cooperman.*

▇▇▇ By contrast, a general retainer is an agreement pursuant to which the client agrees to pay the attorney a fixed sum "in exchange for the attorney's promise to be available to perform, at an agreed price, *any* legal services ... that arise during a specified period. Because the general retainer fee is given in exchange for availability, it is a charge separate from fees incurred for services actually rendered. In other words,

---

4. The Brickman article, which was written before the Court of Appeals' decision in *Cooperman,* discusses at length the reasoning of and effects caused by the Appellate Division's decision in that case.

**80**

*such fees are 'earned when paid' because the payment is made for availability."  Id.* at 6 (emphasis added).  *See also* Restatement of the Law Governing Lawyers § 46 cmt. e, at 213 (Tent. Draft No. 4, 1991) ("A retainer . . . is a fee paid to ensure that a lawyer will be available for the client if required.") (*cited in* Brickman at 23 n. 91); *Black's Law Dictionary* 1183 (5th ed. 1979) ("['Retainer'] can mean a fee not only for the rendition of professional services when requested, but also for the attorney taking the case, making himself available to handle it, and refusing employment by plaintiff's adversary. . . .").  The New York Court of Appeals first recognized the general retainer arrangement in *Martin v. Camp,* 219 N.Y. 170, 176, 114 N.E. 46, 48 (1916), where it noted an "exception" to the client's absolute right to discharge his or her attorney when the attorney, in entering into the contract, changed his or her position or incurred expense, or where the attorney "[was] employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract."  In *Cooperman,* the Court of Appeals expressly stated that such general retainers "continue[d] to be valid."  83 N.Y.2d at 476, 611 N.Y.S.2d at 470, 633 N.E.2d at 1074.

## II.

A party seeking summary judgment must show that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Thus, "if the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  *Id.* at 249–50, 106 S.Ct. at 2510–11; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (when moving party has carried its burden under Rule 56(c), opponent must do more than simply show that "there is some metaphysical doubt as to the material facts").  In ruling on a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of an issue, but merely to determine whether there is an issue to be tried.  *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

These general standards governing the propriety of granting a summary judgment motion also must be informed by the particular substantive law at issue.  Where a contract is ambiguous, it must be construed most strongly against the party who prepared it.  *Jacobson v. Sassower,* 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985).  Due to the fiduciary relationship between attorney and client, courts " 'give particular scrutiny to fee arrangements . . . casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients.' "  *Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 838 (2d Cir.1993) (*quoting Shaw v. Manufacturers Hanover Trust Co.,* 68 N.Y.2d 172, 176, 499 N.E.2d 864, 866, 507 N.Y.S.2d 610, 612 (1986)); *see also Jacobson,* 66 N.Y.2d at 993, 489 N.E.2d at 1284, 499 N.Y.S.2d at 382 ("An attorney has the burden of showing that a fee contract is fair, reasonable, and fully known and understood by the client[.]").  Bearing these standards in mind, the court is driven to conclude that plaintiff here is entitled to summary judgment as a matter of law because there is no question of material fact regarding whether the Retainer Agreement is a special nonrefundable retainer agreement of the type declared invalid by the New York Court of Appeals in *Cooperman.*

First, notwithstanding the averments contained in the Kennedy Affidavit, it is plain from the face of the Retainer Agreement that it is a special nonrefundable retainer agreement.  The Retainer Agreement provided that plaintiff was to pay defendants $225,000 for specified services, including all legal services rendered in connection with the captioned litigation, up to and including ten weeks of trial.  This fee expressly did not include payment for services rendered beyond ten weeks of trial, or services rendered

in connection with an appeal, retrial, or other proceeding. And this fee was made nonrefundable under any circumstances by the provision of the Retainer Agreement stating that "any fee actually paid on or prior to the date of . . . termination shall be deemed earned and no part thereof shall be refundable." Merely reciting the language "shall be deemed earned" does not convert the Retainer Agreement into a general retainer, as defendants would have it; to the contrary, there is nothing in the Retainer Agreement to indicate that the payment was made in exchange for Mr. Kennedy's availability. Moreover, defendants' attempt to characterize the $75,000 as a general retainer and the $150,000 portion of the fee as a special retainer is undermined by the plain meaning of the document; the only apparent distinction between the two sums was that the $75,000 was to be paid upon execution of the contract, while the $150,000 was to be paid two weeks prior to the date of trial. Presumably, had Mr. Wong terminated defendants' services one week before trial and after paying the $150,000, that sum also would have been deemed earned and nonrefundable.

■ Second, while the court finds ambiguous the meaning of the provision in the Retainer Agreement stating that if defendants' legal services were "terminated because of an unforeseen event," then plaintiff agreed to be billed at the rate of $250 per hour for "services actually rendered," *see* Sussman Aff.Ex. C, this ambiguity does not create a genuine issue of material fact rendering summary judgment inappropriate. Plaintiff contends that such provision established the reasonable value of defendants' services at $250 per hour. Defendants maintain that the figure was not intended as a rate for the general performance of legal services, but rather was to come into play only in the event that Mr. Kennedy became unavailable.[5] Regardless of which interpretation of the provision is correct, there is no question that under *Cooperman*, the Retainer Agreement is *per se* violative of public policy. The meaning of

the $250 per hour provision therefore only becomes relevant in determining the value of the services defendants actually rendered to Mr. Wong, as discussed below.

■ Finally, with respect to defendants' contention that a question of material fact exists regarding "[w]hether there was a novation on the part of Mr. Wong when he informed Mr. Kennedy upon discharge that he . . . would not be seeking a refund, and when Mr. Kennedy, in turn, at the client's request, then forbore clarifying his entitlement to the general retainer before this Court; and Whether Mr. Wong is now estopped from seeking a refund[,]" Def.'s 3(g) Statement ¶ 5, the court finds this argument to be little more than an attempt by defendants to manufacture a question of fact. A novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F.Supp. 1281, 1283 (S.D.N.Y.1990), *aff'd*, 925 F.2d 566 (2d Cir.1991). The elements of a novation are: (1) a previously valid obligation; (2) an agreement of all parties to the new contract; (3) extinguishment of the old contract; and (4) a valid new contract supported by consideration. *Ullman–Briggs, Inc. v. Salton, Inc.*, 754 F.Supp. 1003, 1007 (S.D.N.Y.1991). Defendants have failed to raise a triable issue of fact regarding whether these elements are present here.

■ Even though the court concludes that the Retainer Agreement is void as a matter of law, it is not prepared to order defendants to return the $75,000 paid to them by plaintiff. Rather, under the law as set forth in *Cooperman*, counsel is not precluded from recovering payment in quantum meruit for the reasonable value of services actually rendered. 83 N.Y.2d at 472, 611 N.Y.S.2d at 468, 633 N.E.2d at 1072. In determining the value of counsel's services in quantum meruit, the following factors will be relevant: (1) the difficulty of the questions involved; (2) the skill required to handle the

---

5. It bears noting that defendants' characterization of the $250 per hour provision is inconsistent with their argument that the $75,000 was a general retainer paid to ensure Mr. Kennedy's availability. If, as defendants argue, the $250 per hour sum was intended to be a reduced rate applicable only in the event of Mr. Kennedy's unavailability, obviously, Mr. Wong did not ensure Mr. Kennedy's availability by paying the $75,000.

problem; (3) the time and labor expended; (4), counsel's experience, ability and reputation; (5) the customary fee charged for similar services; and (6) the amount involved. *Mar Oil, S.A.*, 982 F.2d at 841.

■■■ Accordingly, counsel are hereby directed to contact the court to schedule a hearing to determine the fees, if any, to which defendants are entitled. Notwithstanding the fact that defendants have conceded they have no contemporaneous records documenting the time spent in representing Mr. Wong, Kennedy Aff. ¶ 18, at the hearing, it will be defendants' burden to document their application for fees with records detailing the dates, hours expended and nature of the work done by each attorney. *520 E. 72nd Commercial Corp.*, 691 F.Supp. at 739 (*citing New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983); *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987) ("[W]here adequate contemporaneous [time] records have not been kept, the court should not award the full amount requested."); *Matter of Estate of Jackson*, 120 A.D.2d 309, 315–16, 508 N.Y.S.2d 671, 676 (3d Dep't 1986) (noncontemporaneous record that failed to specify services performed or time expended was insufficient to support fee application), *appeal denied*, 69 N.Y.2d 608, 507 N.E.2d 322, 514 N.Y.S.2d 1026 (1987). Obviously, in light of these standards, defendants' argument that Mr. Wong somehow is at fault for failing to request an accounting at the time he discharged defendants is unavailing.

### III.

■■■ With respect to plaintiff's application for an order directing defendants to provide him with an accounting of the $10,000 escrow account and/or entering judgment for plaintiff in the amount of $8,500, at this juncture it appears that plaintiff is satisfied with the underlying documents defendants have produced in connection with $1,187 of the amounts expended, but finds the documents produced in connection with $8,500 in expenditures deficient.[6]  *See* Sussman Reply Aff.

¶ 4. More specifically, plaintiff alleges that a check for $2,500 dated August 3, 1990 payable to Charles Kelly and a check for $6,000 dated September 25, 1990 payable to Lawrence Schoenbach and bearing the notation "close out Wong a/c" lack "any corresponding bills or any indication whatsoever justifying the expenditure of plaintiff's funds" and thus represent only a "half-hearted gesture [by defendants] to fulfill their fiduciary responsibilities." Sussman Reply Aff. ¶ 4 & Ex. B.

■■■ As discussed above, it is counsel's burden to keep adequate and contemporaneous records reflecting work performed and, by logical extension, expenditures made in connection with that work. The court agrees with plaintiff that defendants have failed to satisfy this burden with respect to the payments in the amount of $8,500 described above. At oral argument, counsel for defendants advised the court that Mr. Schoenbach is in possession of documents underlying the payment of the $6,000; defendants are hereby directed to obtain this information from Mr. Schoenbach and to provide it to plaintiff. If plaintiff remains unsatisfied with the documentation provided with respect to the $6,000 (or with respect to the $2,500 paid to Charles Kelly), he may renew his application for the return of those funds.

### CONCLUSION

In sum, the court grants plaintiff's motion for summary judgment to the extent that it declares the Retainer Agreement unenforceable. However, the court declines to enter judgment in favor of plaintiff in the amount of $75,000, but rather orders a hearing to determine the reasonable value of any services defendants actually rendered on behalf of plaintiff. Defendants also are ordered to provide a more detailed accounting to plaintiff of the $8,500 expended from the escrow account.

SO ORDERED.

---

6.  The total amount expended by defendants from the escrow account, as reflected by the checks

and bills annexed to the Sussman Reply Affidavit as Exhibits A & B, is $10,687.