816 So.2d 958 (2002)
TOWN OF MAMOU
v.
Gerald FONTENOT, et ux.
No. 01-1622.
Court of Appeal of Louisiana, Third Circuit.
May 8, 2002.
*959 Raymond J. LeJeune, Attorney at Law, Mamou, LA, for Plaintiff/Appellee Town of Mamou.
Guy O. Mitchell, III, Attorney at Law, Ville Platte, LA, for Defendant/Appellant Gerald Fontenot, et ux.
Chuck R. West, West & Vidrine, Ville Platte, LA, for Defendant/Appellee Peter Savoy.
Court composed of ULYSSES G. THIBODEAUX, BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
PETERS, Judge.
This appeal arises from a dispute over a contingent fee contract for legal services entered into between two attorneys and the Town of Mamou, Louisiana (the Town). This matter has previously been before us, and we revisit it on basically the same issue. One of the attorneys, Gerald Fontenot, appeals the trial court's judgment awarding attorney fees on the basis of quantum meruit after finding the contingent fee contract invalid. For the following reasons, we reverse the trial court's determination that the contingent fee contract is invalid and render judgment increasing the attorney fee award from $60,875.00 to $159,265.33.

DISCUSSION OF THE RECORD
The Town of Mamou is a Lawrason Act municipality, La.R.S. 33:321, et seq., governed by a mayor and board of aldermen. Gerald Fontenot first began representing the Town as town attorney in January of 1980, functioning in that capacity until he resigned in June of 1998. For performing the duties generally associated with representation of a small Lawrason Act municipality, the Town paid Mr. Fontenot a monthly retainer of $200.00 and compensated him at the rate of $75.00 per hour for legal services rendered in excess of his *960 monthly retainer. This litigation arises because Mr. Fontenot and another attorney, Frank Peter Savoy, III, entered into a contingent fee contract for the purpose of collecting money due the Town from two non-profit management corporations that had previously managed a hospital and nursing home owned by the Town.
In 1978, the Town purchased a privately owned hospital in Mamou and began operating it through a non-profit corporation organized for that purpose. Sometime after the hospital purchase, the Town constructed a nursing home on the hospital property and began operating it through another non-profit corporation organized for management purposes. On February 1, 1995, the Town leased both facilities to Columbia Hospital, Inc. for operation through a subsidiary known as Notami. The two non-profit management companies agreed to continue collecting all funds that came due prior to February 1, 1995, and to account to the Town for the funds collected. Between the hospital's purchase in 1978 and February 1, 1995, the Town derived no income from its ownership of the hospital and nursing home.
Immediately prior to February 1, 1995, Savoy Medical Center, Inc. managed the hospital, and Savoy Health Care, Inc., managed the nursing home. Each Town alderman served on the board of directors of both corporations. Sometime after February 1, 1995, both non-profit corporations were reorganized, and the aldermen ceased to be directors. Savoy Medical Center, Inc. became Savoy Memorial Foundation, Inc. (SMF), and Savoy Health Care, Inc. became Mamou Health Resources, Inc. (MHR).
Sometime during the transfer process giving Notami operating control of the health care facilities, Linda Lemoine, who was then the hospital's Director of Finance, informed officials of the Town that the hospital held four United States Treasury Bills totaling over $4,000,000.00 in excess profit and offered to transfer two to the Town. The Town accepted this tender, and Ms. Lemoine immediately took the necessary steps to transfer two of the Treasury Bills having a maturity value of $2,150,000.00. The Town acquired possession of the two Treasury Bills soon after February 1, 1995. However, according to Mayor Warren Pierrotte, despite his numerous requests, this was the last financial accounting of the funds collected by or in the possession of the non-profit corporations for over a year.
The mayor testified that his concerns in not receiving any additional information concerning the winding down activities of SMF and MHR were heightened when, sometime in the latter part of 1995, the Town discovered that Hibernia National Bank of Alexandria, Louisiana, had on deposit a total of $950,000.00 in the Town's name in multiple accounts. He understood these accounts to contain residual amounts from reserve accounts and sinking funds that were no longer necessary for the operation of the health care facilities.
The mayor made no inquiries of SMF and MHR concerning these accounts. Instead, he convened a meeting with James Butler, the town clerk, and J.L. Saucier, one of the Town's aldermen, to discuss what to do about these deposits.[1] During the meeting, Mayor Pierrotte telephoned Mr. Fontenot, who then telephoned the appropriate Hibernia Bank officials to discuss transfer of the funds on deposit to the Town's direct control. After the Town *961 provided Hibernia Bank with the requested documentation, the bank provided the Town with three Certificates of Deposit totaling $954,238.66.[2]
In late January or early February of 1996, Mayor Pierrotte began taking steps which would ultimately give rise to the contingent fee contract at issue in this litigation. He first approached Mr. Savoy and expressed his concerns about the failure of SMF and MHR to provide an accounting of the funds collected in the winding up process. Mr. Savoy, a former mayor of Mamou and a recent law school graduate, was employed as the chief operating officer of Savoy Medical Center, Inc. on February 1, 1995.[3] According to Mr. Savoy, the mayor inquired whether he would be interested in representing the Town in seeking an accounting, but did not mention Mr. Fontenot. However, Mr. Savoy testified that, two days later, the mayor returned and asked that he work with Mr. Fontenot in the accounting and collection effort. Mr. Fontenot recalled that, when the mayor approached him concerning the possible legal action, he requested that Mr. Fontenot work with Mr. Savoy, suggesting that Mr. Savoy's "insider" status would be helpful. While recalling little about his discussions with Mr. Savoy and Mr. Fontenot, Mayor Pierrotte acknowledged that having Mr. Fontenot work with Mr. Savoy was his idea.
After these initial conversations, the three men then met and discussed the terms of the employment contract. Mr. Fontenot recalled that the mayor suggested a contingent fee contract, yet Mr. Savoy recalled that the contingent fee contract was the general consensus of all involved in the discussion. The mayor simply could not recall who suggested it.
The board of aldermen of the Town, at a special meeting held February 7, 1996, unanimously[4] approved the following actions:
[T]o request from Mamou Health Resources, Inc. and Savoy Memorial Foundation, Inc. (formerly Savoy Medical Center, Inc.) an accounting of all funds held for the Town of Mamou, the collecting of said funds, and to authorize the town attorney to pursue the accounting and collection.
... [T]o authorize the hiring of one or more attorneys to assist the town attorney in the above endeavor with the following stipulations. The fee basis for all attorneys involved, including the town attorney, will be set at 25% of all collections before litigation is filed and 33 1/3% of all collections after litigation is filed. All fees will become payable at time of settlement.
Finally, all compromise agreements must be approved by both the Town of Mamou and the attorneys hired by them before settlement is reached.
Pursuant to this authorization, on February 11, 1996, Mayor Pierrotte, Mr. Fontenot, and Mr. Savoy executed a document entitled "AGREEMENT FOR LEGAL SERVICES" which provided in part, as follows:
[The Town] employs and retains [Fontenot and Savoy] for representation in the matter of a claim arising out of:

*962 FUNDS/MONIES OWED TO THE TOWN OF MAMOU, LOUISIANA BY MAMOU HEALTH RESOURCES, INC. AND SAVOY MEMORIAL FOUNDATION, INC. (FORMERLY SAVOY MEDICAL CENTER, INC.), A NON[sic]-FOR-PROFIT ORGANIZATION, OR ANY OTHER ENTITY DRIVING FUNDS/MONIES FROM THE OPERATION OF SAVOY MEDICAL CENTER, SAVOY MEMORIAL HOSPITAL OR ANY OTHER NAME USED FOR THE MAMOU HOSPITAL.
[The Town] hereby authorizes and empowers [Fontenot and Savoy] to investigate, prosecute, and collect, whether by suit, compromise, or otherwise, [the Town]'s claim against any and all persons, corporations, insurers, or other entities who [Fontenot and Savoy] believe might be responsible therefore.
[Fontenot and Savoy] undertake said employment and agree to render said services and agree to assert [the Town]'s position diligently, and in consideration of services rendered and/or to be rendered, [the Town] does hereby agree to pay [Fontenot and Savoy]:
Twenty-Five percent (25%) of all amounts recovered before suit is filed. Thirty-Three and One Third percent (33 1/3%) of all amounts recovered after suit is filed.
For any amount recovered wholly or partly on a structured settlement or deferred annuity basis, the applicable percentage shall be due at the time of recovery on the present value of the recovery.
[The Town] hereby assigns and irrevocably conveys to [Fontenot and Savoy] an interest in the aforementioned claim or claims according to the above agreement, and it is specifically agreed that [Fontenot and Savoy] have a vested interest in the claim or claims and suit or suits to that extent.
[The Town] hereby agrees to reimburse [Fontenot and Savoy] for all reasonable expenses [Fontenot and Savoy] might incur in representing and prosecuting the [Town]'s claim and suit or suits. Neither [Fontenot and Savoy] or [sic] [the Town] may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of any claim or suit.
Mr. Fontenot immediately began negotiating with officials of SMF and MHR, but his efforts failed to produce an accounting. After his efforts proved fruitless, Mr. Fontenot filed suit to require SMF and MHR to render an accounting and remit to the Town the funds it was due. On May 1, 1997, after suit was filed, someone within the new hospital management team forwarded Mr. Fontenot a $750,791.00 check, made payable to him alone, representing SMF funds. Mr. Fontenot distributed all but $250,000.00 of that amount to the Town. Sometime later, Mr. Fontenot transferred $125,000.00 to Mr. Savoy. The remaining $125,000.00 remained in Mr. Fontenot's trust fund as of the time of trial.
SMF and MHR reconvened against the Town seeking a return of the funds previously recovered by the Town. However, a September 5, 1997 partial summary judgment issued by the trial court[5] terminated the contracts previously existing between the non-profit corporations and the Town, effective September 30, 1997, and ordered the parties to cooperate in effecting "an orderly and smooth transition of the remaining duties and obligations [of the corporations] *963 to the [Town]." Thereafter, the litigants agreed to suspend further legal action and work toward a complete accounting and settlement.
On May 21, 1998, SMF forwarded the Town a $119,801.00 check made payable to Mr. Fontenot and the Town. This remittance resulted from a written agreement between the Town and SMF executed on May 7, 1998, wherein the Town agreed to release SMF from any "sick-pay" obligations that might still exist from operations of the hospital prior to February 1, 1995, in exchange for the $119,801.00 payment. On the same day that SMF forwarded the $119,801.00 check, the Town entered into a written compromise agreement with SMF and MHR terminating the litigation. Mayor Pierrotte signed the compromise agreement on behalf of the Town, and Mr. Savoy notarized the document.
Between February 11, 1996, and May 21, 1998, the Town took no action to modify or terminate the contingent fee contract. Strangely, this litigation actually began, not as a suit by Mr. Fontenot on the contingent fee contract, but as a suit by the Town against Mr. Fontenot and his wife involving the ownership of certain immovable property. The property matter was ultimately settled, but, through reconventional demands, third-party demands, and supplemental and amending petitions, the principal issue of the litigation soon became the payment of attorney fees under the February 11, 1996 contract. Mr. Savoy, who had become a party to the attorney fee litigation, settled his claim with the Town, retaining $75,000.00 of the $125,000.00 previously tendered to him by Mr. Fontenot. The matter ultimately went to trial with only Mr. Fontenot's attorney fee and his third-party demand against Mr. Savoy at issue.
Before trial, the trial court granted the Town's motion for summary judgment and dismissed Mr. Fontenot's claims. This judgment resulted in the first appeal to this court. In Town of Mamou v. Fontenot, 99-1650, pp. 3-4 (La.App. 3 Cir. 4/12/00), 756 So.2d 719, 721-22, we summarized the trial court's action as follows:
The Town ultimately dismissed its claims against Mr. Savoy on the basis of a compromise and filed the instant motion for summary judgment against Mr. Fontenot on the issues of the validity and scope of the contingency fee agreement. Specifically, the Town asserted in its motion for summary judgment that there were no genuine issues of material fact and that it was entitled to partial summary judgment as a matter of law decreeing (1) that the February 7, 1996 resolution employing Mr. Fontenot on a contingency fee basis was unconstitutional and not authorized by Louisiana law, (2) in the alternative that the language of the resolution governed the contractual relationship between the parties and superceded the written contingency fee agreement to the extent that the written agreement was inconsistent with the resolution, and (3) that $2,150,000.00 in United States Treasury Bills (which Mr. Fontenot included in the $5,861,457.80 allegedly recovered by the attorneys on behalf of the Town) were not subject to the February 7, 1996 resolution or the written contingency fee agreement.
The trial court granted the motion for summary judgment, decreeing that the February 7, 1996 resolution was invalid because it lacked constitutional and legislative authorization, violated the constitutional prohibition against donation of public funds, and was inconsistent with other legislation dealing with public funds. The trial court also decreed that the written contingency fee agreement *964 was also invalid because it was neither authorized nor ratified by the board of aldermen and was inconsistent with and broader than the February 7, 1996 resolution. The trial court further disallowed any fee concerning the $2,150,000.00 in treasury bills.
This court reversed the trial court's grant of the summary judgment and remanded the matter to the trial court for further proceedings. Specifically, this court concluded that a contingent fee contract between a Lawrason Act municipality and an attorney does not violate Louisiana law and that there remained issues of material fact precluding the grant of a summary judgment.
After remand and trial, the trial court issued oral reasons for judgment in which it concluded that the February 11, 1996 contract did not conform to the true intent of the parties and was not ratified by the Town. Finding no valid contingent fee contract, the trial court applied quantum meruit principles and set Mr. Fontenot's attorney fee at $60,875.00. The trial court ordered that Mr. Fontenot return to the Town the difference between that amount awarded and the funds he retained from the $750,791.00 recovered in May of 1997.
In his appeal, Mr. Fontenot asserts five assignments of error: (1) that the trial court erred in holding the contingent fee contract invalid, (2) that the trial court erred in not enforcing the terms of the contingent fee contract, (3) that the trial court erred in finding that the criteria for quantum meruit and reasonableness of a fee on a contingent fee contract are the same, (4) that the trial court erred in dismissing his cross claim against Mr. Savoy, and (5) that the trial court erred in not awarding legal interest on the judgment in his favor.

OPINION
Louisiana Civil Code Article 1983 provides that "[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." Courts must interpret contracts according to the common intent of the parties. La.Civ. Code art. 2045. Additionally, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ. Code art. 2046. Additionally, "Louisiana courts have long approved of the contingent fee contract to compensate attorneys." O'Rourke v. Cairns, 95-3054, p. 4, (La.11/25/96), 683 So.2d 697, 700.
We find merit in Mr. Fontenot's first assignment of error and conclude that the trial court did err in finding that the February 11, 1996 contingent fee contract did not conform to the true intent of the parties, as all of the evidence establishes otherwise. Mayor Pierrotte testified that the matter was presented to the board of aldermen as a contingent fee contract and that both he and the board fully understood the terms of the proposed action. All of the aldermen called to testify acknowledged that they understood their February 7, 1996 vote was to approve a contract wherein Mr. Fontenot and other counsel that might be hired to assist in the accounting and collection effort were given authority to obtain an accounting from MHR and SMF and to recover the funds due the Town. They all understood that the attorneys would receive as compensation the percentages approved at the February 7, 1996 meeting and that these legal fees might well be significant if large sums were collected on behalf of the Town. The February 11, 1996 contract, while not reviewed by the board of aldermen at a *965 meeting for that purpose, constituted nothing more than that which had been approved at the February 7, 1996 meeting. Thus, we again reverse the trial court's determination that the contingent fee contract is invalid. However, in finding merit in Mr. Fontenot's first assignment of error and reversing the trial court on this issue, we do not automatically conclude that he is entitled to a percentage fee as defined in the contingent fee contract.
At trial, the litigants stipulated that there are five amounts at issue: (1) the two U.S. Treasury Bills ($2,150,000.00) obtained by the Town in February of 1995; (2) the certificates of deposit ($952,664.11) acquired from Hibernia Bank on February 21, 1996; (3) the funds ($750,791.00) paid by Notami on May 1, 1997; (4) the funds ($119,801.00) paid on May 21, 1998, in settlement of the "sick-pay" issue; and (5) accounts receivable totaling $1,893,950.00, of which $85,000.00 had actually been collected at the time of trial. Each of these must be considered separately to determine its relationship to the contingent fee contract.

$2,150,000.00 in Treasury Bills
Mr. Fontenot acknowledges that these funds were in the possession of the Town almost a year before he entered into the contingent fee agreement, but argues that he should be paid for their collection because he was required to defend the money in the Town's possession in the suit against SMF and MHR. Specifically, he asserts that, when SMF and MHR requested reimbursement of these funds in its reconventional demand, the defense of that claim was a part of the contingent fee contract. We disagree with this assertion.
The words of the February 11, 1996 contract are clear and explicit concerning the obligations of Mr. Fontenot and Mr. Savoy. They were to collect "FUNDS/MONEY OWED TO THE [TOWN] BY [MHR] AND [SMF] ... OR ANY OTHER ENTITY DERIVING FUNDS/MONIES FROM THE OPERATION OF SAVOY MEDICAL CENTER, SAVOY MEMORIAL HOSPITAL OR ANY OTHER NAME USED FOR THE MAMOU HOSPITAL." The contract was not one to defend the Town against claims for reimbursement, but one to collect funds owed the Town. Thus, we find that Mr. Fontenot is not entitled to a contingent fee for any actions he may have had in relation to the collection or protection of the Treasury Bills.

$952,664.11 on Deposit in Hibernia Bank
These funds were already in Town accounts when discovered by the town clerk. Mr. Fontenot did nothing more than take the necessary steps to have them transferred from one Town account to another. Additionally, Mayor Pierrotte testified that "it never dawned on [him that] there'd be a collection on the $950,000.00 that we got in the manner we got [it]." Mr. Fontenot did nothing more than that which would have been required of him as town attorney in regard to these funds. Although avoidance of this issue would have been a simple communication matter, we do not conclude that Mr. Fontenot is entitled to a contingent fee for having these funds transferred from one Town account to another. Nothing within the services he performed in relation to these funds constituted representation of the Town in a "claim" against SMF and MHR as contemplated by the contingent fee contract.

$750,791.00 Transferred from Notami on behalf of SMF and $119,801.00 Transferred as Settlement of Sick Leave Issue
It is not disputed that these sums were paid as a result of the suit filed by *966 Mr. Fontenot. Thus, we find that these are subject to the terms of the contingent fee contract.

$1,893,950.00 in Accounts Receivable
Mr. Fontenot argues that he is entitled to a contingent fee based on the entire $1,893,950.00 in accounts receivable assigned to the Town in the settlement. However, while we agree that these accounts receivable were obtained as a result of the litigation, Mr. Fontenot recovered only $85,000.00, and the contingent fee should be based only on that amount.

Calculation of Attorney Fee Due
Through the efforts of Mr. Fontenot and Mr. Savoy, the Town received $955,592.00 it had not previously been paid. One-third of that amount is $318,530.66 and one-half of that amount is $159,265.33.[6] However, the Town argues that such a fee is unreasonable and that, therefore, is not owed.
Rules of Professional Conduct, Rule 1.5(a) provides that "[a] lawyer's fee shall be reasonable" and sets forth a number of factors to be considered in determining the reasonableness of a fee. These factors are:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
Additionally, "[t]he prohibition against lawyers charging clearly excessive or unreasonable fees extends to contingency contracts." Davidson, Meaux, Sonnier, McElligott & Swift v. Brodhead, 613 So.2d 1038, 1041 (La.App. 3 Cir.1993).
However, the reasonableness of a contingent fee cannot be determined by simply multiplying the hours worked by an hourly rate customary in the legal community. To do so would be both overly simplistic and destructive of the whole contingent fee concept. "A contingent fee contract is a contract for legal services in which the attorney's fee depends upon success in the enforcement of the client's claim. The attorney bears the risk of loss insofar as his legal services are concerned. Such contracts promote the distribution of needed legal services by reducing the risk of financial loss to clients and making legal services available to those without means." Saucier v. Hayes Dairy Prods., Inc., 373 So.2d 102, 105 (La.1978) (emphasis added) (citations omitted). Thus, simply multiplying the 478 hours found by the trial court to be the time expended by Mr. Fontenot on this litigation by an hourly rate (in this case $125.00) and comparing it to the contractual amount of attorney fees is clear error. Certainly, we would not have allowed Mr. Fontenot to recover his time from the town had he been unsuccessful in the litigation.
*967 Saucier is the seminal case cited by most opinions evaluating the reasonableness of attorney fees, particularly contingent fees. Yet, that opinion addressed only the question of how to compensate an attorney who had entered into a contingent fee contract with a client and was later discharged without cause. Initially, the supreme court concluded that the attorney was entitled to the percentage provided for in the contingent fee contract. However, on rehearing, the supreme court recognized that such a decision would subject the client to the payment of two separate percentagesone to the discharged attorney and another to the replacement attorney, leaving the client in that particular case with only one-third of the money recovered. The supreme court resolved this inequity by concluding that the total recovery was subject to only one contingent fee and remanded the matter to the trial court for a determination of how to divide that single fee between the attorneys involved, taking into consideration the provisions of the Code of Professional Responsibility then in effect. The supreme court stated that the "solution envisions apportionment of only the highest agreed upon contingent fee in accordance with the factors set forth in the Code of Professional Responsibility." Id. at 118 (emphasis added). Nothing in Saucier suggests that the one-third contingent fee should be evaluated to determine if its value exceeds the hours worked. See also, O'Rourke, 683 So.2d 697; Palmer v. Goudchaux/Maison Blanche, Inc., 613 So.2d 704 (La.App. 5 Cir.1993).
Thus, the first question to be answered is whether the percentage charged by Mr. Fontenot is reasonable, and we find that sixteen and two-thirds percent is clearly reasonable. In reaching this conclusion, we find nothing in the record to suggest that Mr. Fontenot took advantage of the Town in any way. In fact, it appears just the opposite. Mayor Pierrotte, not Mr. Fontenot, initially envisioned the need for an accounting and collection action. Furthermore, he made a condition of Mr. Fontenot's employment in the matter the use of Mr. Savoy for the stated reasons that Mr. Savoy was an "insider." While Mr. Savoy's participation raises conflict-of-interest questions, the record is not sufficient to completely analyze the exact nature of the relationship between Mr. Savoy and the health care facilities, nor is that issue now before us.
Of particular importance in this analysis is the fact that the mayor and aldermen clearly understood the nature of the contingent fee contract and the possibility that the attorney fees might be significant. What is clear from the record is that dissatisfaction with the contract occurred, not because of the lack of understanding on the part of the mayor and board or aldermen, or because Mr. Fontenot did not adequately represent the Town, but because of external criticism and second thoughts. The mayor testified that, although he executed the contract fully aware of its contents, he chose not to honor it because "the lawyers in [his] community" advised him not to do so. Most of the aldermen expressed no opinion concerning honoring the agreement, but, at least one, Ricky Fontenot, suggested that it should have been honored to some extent. Despite this external pressure, the Town never took any action to modify or terminate the contingent fee contract. Instead, it chose to reap the benefit of Mr. Fontenot's collection efforts on its behalf while retaining the risk-free benefit to itself inherent in a contingent fee contract, unlike Mr. Fontenot, who, through the trial court's judgment, was not able to enjoy the benefits of the contingent fee agreement, yet was required to take the risks.
*968 In our opinion, little else is required to conclude that Mr. Fontenot is entitled to full recovery under the contingent contract. It was an agreement in classic contingent fee form in which Mr. Fontenot risked receiving no compensation. We cannot find that vague assertions of public criticism or disapproval after the fact should preclude the Town from complying with its contractual agreement.
Even considering the other factors set forth in the Rules of Professional Conduct, Rule 1.5(a), the result would be the same. While the general area of law involved, collection law, is not necessarily an extremely difficult field, the circumstances of this litigation created novel and difficult problems. Not only did Mr. Fontenot find himself analyzing interlocking non-profit corporations which were subject to strict state and federal governmental scrutiny, differentiating between the actions of the former management companies and the new lessee, and attempting to isolate and collect funds due the Town, but he was also required to satisfy the political desires of the mayor and aldermen.
On the one hand, the mayor wanted the funds collected and reduced to the Town's possession. On the other hand, he testified that he never really intended that the accounting dispute should result in a law suit. While professing to believe that, because of the small nature of the community and the relationship between the Town and the health care facilities, litigation should be avoided at all costs, he admitted that he instructed Mr. Fontenot to pursue court action to obtain an accounting. Mr. Fontenot's task was made even more difficult by the mayor's insistence that he share his contract obligations and compensation with Mr. Savoy, an inexperienced lawyer who had an employment relationship with the very parties from whom Mr. Fontenot was to obtain an accounting.[7] Thus, Mr. Fontenot was required to proceed with the collection process while being careful to avoid any actions that might be construed as professional misconduct.
We do not find any evidence that the acceptance of this particular employment by Mr. Fontenot precluded him from accepting any other employment, particularly given the fact that he was already representing the Town. Additionally, a stipulation by the litigants that the usual hourly rate charged by attorneys in the Evangeline Parish area was $100.00 to $125.00 is of no major import given our prior discussion of the contingent fee contract nature.
In considering the next three factors, we first recognize that the 478 hours worked by Mr. Fontenot, together with the hours provided by Mr. Savoy, resulted in a recovery for the Town of $955,592.00. While the mayor suggested that the Town actually came out "in the hole" when the matter was ultimately settled, he presented no evidence to support this assertion, and he did not dispute that the Town received the funds at issue through the litigation process. While the Town placed no time limitations on Mr. Fontenot's performance, the record clearly reflects that its actions in attempting to balance the politics of the situation with the desired result made Mr. Fontenot's task more difficult. Furthermore, Mr. Fontenot had a long professional relationship with the Town. At the time he entered into the contingent fee contract, he had served as town attorney for some sixteen years.
*969 Although he graduated from law school in 1979, Mr. Fontenot's professional career did not include significant trial experience. During his years immediately after graduation from law school, he worked for a firm that specialized in litigation, but he was seldom the lead attorney in any of the trial activity. Mr. Fontenot could point to involvement in only one large collection matter during his career. His other jury trial experience was solely in a supporting role. Still, his experience derived from his courtroom activity and his propensity for detail[8] gave him sufficient experience and skill to prosecute a collection case pursuant to his obligations under the February 11, 1996 contract.
In considering Mr. Fontenot's assignments of error, we conclude that the trial court erred in declaring the contingent fee contract invalid and in not enforcing its terms. Having reached those conclusions, we find it unnecessary to consider Mr. Fontenot's third and fourth assignments of error. Considering the final assignment of error, we award Mr. Fontenot legal interest on that portion of the award not already in his possession from date of judicial demand until paid in full.

DISPOSITION
For the foregoing reasons, we reverse the trial court's judgment declaring the contingent fee contract of February 11, 1996, invalid and awarding Gerald Fontenot an amount based on quantum meruit principles for professional services rendered. We render judgment herein declaring the February 11, 1996 contingent fee contract valid and enforceable according to its terms and increase the attorney fee award to Mr. Fontenot from $60,875.00 to $159,265.33, giving the Town of Mamou credit for the $125,000.00 previously retained by Gerald Fontenot. We further award Gerald Fontenot legal interest on $34,265.33, from the date of judicial demand until paid in full. We tax all costs of this litigation to the Town of Mamou.
REVERSED AND RENDERED.
WOODARD, J., concurs in the result.
DECUIR, J., concurs in the result.
NOTES
[1] A letter from Mayor Pierrotte to the Hibernia Bank suggests that this meeting occurred on February 13, 1996.
[2] Correspondence in the record suggests this occurred by correspondence dated February 21, 1996.
[3] Mr. Savoy was still associated with either the hospital or the nursing home operation at the time Mayor Pierrotte first approached him, but the record does not reveal the specific nature of that association.
[4] One member of the board of alderman, Karrel Ardoin, was absent.
[5] The litigation between the Town and the two non-profit corporations was presided over by a different judge of the Thirteenth Judicial District.
[6] Mr. Fontenot has always claimed only half of the contingent contract percentage, conceding that any claim for the other half belongs to Mr. Savoy.
[7] At the time of the trial of this matter, Mr. Savoy had settled with the Town for the previously mentioned $75,000.00, had replaced Mr. Fontenot as town attorney, and still maintained some unspecified relationship with the hospital complex.
[8] Mr. Fontenot holds a degree in mechanical engineering.