OPINION OF THE COURT
Kaye, J.
A contingent fee retainer agreement, on a form supplied by counsel, "to prosecute or adjust” a client’s personal injury claim, with no provision regarding the advance of litigation expenses is — in the context of the present case — unclear, and will be read most favorably for the client. Here we conclude that, so construed, the retainer agreement ended upon an adverse judgment following trial and that, even if this agreement persisted through appeal, it required the attorney to continue advancing the client’s litigation expenses. In either event counsel is entitled to no fee for services rendered during the trial.
Injured during a holdup that occurred as he waited in line at a bank teller’s window, plaintiff engaged Fuchsberg & Fuchsberg (respondent) as his counsel. The agreement, on a form furnished by respondent, provided that plaintiff retained the firm "to prosecute or adjust a claim for damages arising from personal injuries”. The agreement continued: "In consideration of the services rendered and to be rendered by [the firm], the undersigned hereby agrees to pay you, and you are authorized to endorse for the undersigned any checks that may be paid in settlement of this action, and to retain out of any monies that may come into your hand by reason of the above claim: thirty-three and one-third (33-Vá%) percent of the sum recovered, whether by suit, settlement or otherwise. Such *175 percentage is computed on the net sum recovered after deducting and repaying to the attorneys disbursements incurred in accordance with the Rules of the Appellate Division, First and Second Departments.”
A jury trial of plaintiff’s damages action against the bank and others resulted in a defendants’ verdict and judgment dismissing the complaint. Respondent thereafter advised plaintiff that, while prepared to proceed with an appeal and any retrial of the case, it would not continue to advance costs and disbursements, estimated to be several thousand dollars. After the parties’ own efforts to resolve their differences failed, plaintiff moved to substitute William Thomashower as his attorney. While not opposing substitution, respondent maintained that it had no obligation to advance litigation expenses and that, because plaintiff had discharged the firm without cause, before surrendering the files it was entitled to a lien on any ultimate recovery on a quantum meruit basis as well as reimbursement for expenses. Special Term, without elaboration, imposed a lien on any ultimate recovery, to be fixed on a quantum meruit basis, and directed turnover of the records upon the filing of an undertaking for expenses. The Appellate Division affirmed, without opinion (90 AD2d 468).
On appeal of plaintiff’s damages action by new counsel, the Appellate Division reversed and directed a retrial (95 AD2d 738). Plaintiff then concluded two agreements — one with respondent and a second with attorney Max Toberoff. The recited purpose of the first agreement, looking toward plaintiff’s retention of Toberoff, was to fix the amount of respondent’s lien. The parties agreed that, in the event of recovery, respondent would receive two amounts, each calculated as a percentage of the recovery: the first (in actual fact, $122,656.01), one third of Toberoffs fee, would be payable immediately and unconditionally upon recovery. The second amount ($38,888.88), one ninth of the first $350,000 recovered —on which Toberoff had agreed to charge no fee — would be held by Toberoff in escrow, subject to plaintiff’s appeal to this court on respondent’s right to any fee. Plaintiff’s agreement with Toberoff acknowledged the contemporaneous agreement with respondent and further provided that if retrial "terminates in a verdict for the defendants and Leonard Shaw is desirous of taking an appeal, that Max Toberoff will relinquish the files to any appeals lawyer as Mr. Shaw selects and Mr. Shaw shall have the option of discharging Toberoff as his attorney, and in this event Toberoff shall not be entitled to *176 any fee whatsoever for legal services rendered, except that he will have a lien for his disbursements, which shall include the disbursements of Fuchsberg & Fuchsberg which Toberoff returned to Fuchsberg & Fuchsberg.”
Plaintiff’s action was then retried and settled for $1.5 million. As agreed, $122,656.01 — a third of ToberofFs fee — was immediately paid to respondent and is not in issue on this appeal; $38,888.88 — calculated on the portion of plaintiff’s recovery not subject to ToberofFs fee — was placed in an interest-bearing account and is the focus of this appeal, here by our leave (66 NY2d 604). Plaintiff advances two alternate grounds for denying respondent that recovery: first, the retainer ended with the adverse verdict and entry of judgment for defendants, entitling the firm to nothing under its agreement, and second, respondent breached its agreement by refusing to proceed with the appeal except on new terms. On both grounds we agree that the disputed amount of $38,888.88 is not owing to respondent, and therefore reverse the Appellate Division order and deny the application for a lien.
The importance of an attorney’s clear agreement with a client as to the essential terms of representation cannot be overstated. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements (Code of Professional Responsibility, EC 2-19, EC 2-20; see generally, Wolfram, Modern Legal Ethics § 9.4). While, in the law generally, equivocal contracts will be construed against the drafters, courts as a matter of public policy give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients (Jacobson v Sassower, 66 NY2d 991, 993; Gair v Peck, 6 NY2d 97, 106, cert denied 361 US 374; see also, 1 Speiser, Attorneys’ Fees §§ 2:3, 2:9).
The first controversy between the parties is as to the term of the agreement: did the contract permit termination upon the entry of an adverse judgment after trial, or was the representation to continue through conclusion of the matter, including appeal? The real issue here is of course one of responsibility for fees rather than compelling either the client or the lawyer to continue the representation, for a client has the absolute right to discharge an attorney at any time (Teichner v W & J Holsteins, 64 NY2d 977, 979; Crowley v *177 Wolf, 281 NY 59, 65), and a lawyer in appropriate circumstances may withdraw (see, Code of Professional Responsibility, DR 2-110, DR 5-102, DR 5-105; NY City Bar Ethics Opn No. 1986-6, NYU, July 21, 1986, p 2, col 3). If plaintiff breached the retainer agreement, then respondent is owed fees for its services on a quantum meruit basis (Teichner v W & J Holsteins, supra).
The retainer agreement supplied by respondent speaks only of prosecuting or adjusting a claim for damages; no mention is made of appeals. While not claiming the existence of any issues of fact requiring a hearing, respondent points to authorities supporting its position that under the agreement representation persists through conclusion of the matter, including appeal (see, e.g., Matter of Ellis v Mitchell, 193 Misc 956, affd without opn 275 App Div 767; Mrozinski v Marinello, 46 Misc 2d 637; Gair, Gair & Conason v Stier, NYU, Mar. 15, 1985, p 11, col 5, affd 123 AD2d 556); plaintiff points to contrary holdings (see, e.g., Holzberg v Feuerstein, 104 AD2d 971; Vitale v La Cour, 92 AD2d 892, lv denied 60 NY2d 556; Eckert v Truman, 158 App Div 939; Slepin v Beck, 84 Misc 254). From a reading of the language of the retainer agreement itself, both interpretations are reasonable. In such event the law requires that an agreement between client and attorney be construed most favorably for the client (Greenberg v Bar Steel Constr. Corp., 22 NY2d 210, 213). Had the client maintained that the retainer agreement required respondent’s representation through conclusion of the matter (as was true in the cases relied on by respondent), that would have been the mandated interpretation. But where, as here, the client has asserted that the contract terminated upon entry of an adverse judgment we hold that the agreement must be construed so to provide.
The agreement having ended with the entry of a judgment in the trial court dismissing the complaint, no fee was owed. The contract provided that respondent’s fee would be determined by the sum recovered, and none was recovered.
Plaintiff’s alternative argument also has substance: if the representation was by contract to persist through appeal then respondent breached the agreement by insisting that it would continue only on new terms. If respondent breached the contract, again it would be owed no fee (see, Teichner v W & J Holsteins, 64 NY2d, at p 979, supra; Crowley v Wolf, 281 NY, at p 65, supra; Matter of H, 93 NY 381, 384-385).
*178 In the circumstances presented, the requirement that plaintiff defray expenses as incurred was a new term. The retainer agreement contains no provision spelling out the interim responsibility for payment of expenses as incurred.* It speaks only of the ultimate fee being computed "on the net sum recovered after deducting and repaying to the attorneys disbursements incurred”. Respondent actually advanced all expenses through the unsuccessful trial, but refused to continue to advance the costs of appeal. The law firm’s dilemma is certainly understandable. It had already advanced more than $11,000 in costs and disbursements over a three-year period; there was a defendants’ verdict; and the cost of the trial transcript alone — which would be necessary for the appeal— exceeded $4,000. The retainer agreement, however, provided for "deducting” and "repaying” disbursements out of the ultimate recovery. Any ambiguity engendered by this language could be resolved by reference to respondent’s consistent practice, in its relationship with plaintiff, of advancing all litigation expenses.
Again seeking no factual hearing on this issue, respondent points to authorities supporting its contention that the agreement did not obligate the firm to advance costs during the term of the relationship; plaintiff urges that it did so provide. From these arguments the only proposition that emerges with clarity is that the retainer agreement might be read to support both views, and given the controlling public policy must be read to support the client’s view (see, Jacobson v Sassower, 66 NY2d, at p 993, supra).
We would but note the practical impact of the combined lack of clarity as to the term of the retainer agreement and the responsibility for advancing expenses. Having lost after trial, plaintiff was suddenly confronted with a request that he advance several thousand dollars in expenses or find other counsel. Respondent would not release the case files without *179 assurance that it would be paid its fees and disbursements. Efforts to secure substitute counsel were necessarily beclouded by uncertainty as to whether the agreement with respondent had been properly terminated, or was breached, and by whom. A quantum meruit lien had been imposed. In order to obtain other counsel, a new agreement had to be negotiated with respondent, whereby the amount of respondent’s fee was fixed —and in the bargain part of respondent’s fee was made payable unconditionally.
But we are also not blind to respondent’s predicament. Having represented its client for several years respondent is now denied a substantial portion of its fee. In order to avoid the consequences suffered here both by the client and by the lawyer, it is essential that the terms of representation — particularly in matters of fundamental, foreseeable and commonplace as those before us today — be set down with clarity. And the onus is upon the lawyers who draft such agreements to do so.
Accordingly, the order of the Appellate Division should be reversed, with costs, and respondent’s application for a lien denied.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

 The ultimate obligation to pay litigation expenses at all times remains that of the client (see, Rules of Appellate Division, Code of Professional Responsibility, DR 5-103 [B]; First Department Rules, 22 NYCRR 603.7 [b], [e]; Wolfram, Modern Legal Ethics § 9.2.3). In the present case the litigation expenses were actually paid to respondent and are not in issue. So long as all applicable laws and rules are complied with, we express no view on the desirability of an attorney agreeing to advance expenses for a client. As the present case demonstrates, litigation expenses can quickly become very substantial, making it all the more important that arrangements regarding these payments be crystal-clear.