613 So.2d 704 (1993)
Dr. Richard D. PALMER
v.
GOUDCHAUX/MAISON BLANCHE, INC.
No. 92-CA-759.
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1993.
Writ Denied April 23, 1993.
*705 Leon H. Rittenberg, Jr., Larry C. Becnel, Jerome J. Pellerin, New Orleans, for plaintiffs-appellants.
Gregory J. Avery, T. Peter Breslin, Metairie, John G. Gomila, Jr., New Orleans, for defendant-appellee.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.
This concursus proceeding concerns a dispute between an attorney and his former client over the proper fee to be paid pursuant to a contingency fee contract for successful representation in a personal injury case. The contract provided for 35% of the amount recovered prior to litigation, 40% after filing of suit, and 45% if the case were appealed. After trial of the concursus proceeding the trial judge found that although the original attorney had been discharged and new counsel employed by the client while the underlying suit was on appeal, the original attorney had nonetheless by then substantially completed all work for the appeal. He therefore awarded original counsel 45% of the amount recovered or over 1.3 Million dollars. Because we determine that the trial judge fell into legal error in his assessment of original counsel's work during the appellate process, we reduce the fee award to 40% of the amount recovered. We also vacate the award of judicial interest for the reasons set out below. In all other respects the judgment is affirmed.
The facts of the underlying personal injury suit are reported at Palmer v. Goudchaux/Maison Blanche, Inc., 588 So.2d 737 (5th Cir.1991), writ denied 590 So.2d 1186 (1992), and, therefore, need not be repeated in detail here. We do, however, note the following facts which we deem pertinent to the present litigation. Richard Palmer, the original plaintiff, was shopping at a Goudchaux/Maison Blanche department store and presented to the clerk a store credit card for payment of some goods. The card had been reported stolen and the clerk called store security to investigate the matter. After a brief discussion with the security guard, Palmer decided to leave the store. As he was walking out the security guard physically subdued and handcuffed him, and led him to an office.
*706 The police were summoned and after a brief investigation, Palmer was released. During the scuffle with the guard, a pre-existing spinal fusion was disrupted, and Palmer suffered a serious aggravation to this pre-existing condition.
Palmer approached Gregory Avery, an attorney of his acquaintance, to represent him in a personal injury suit against the department store. The basic terms of the attorney fee contract which Palmer eventually signed were, as set forth above, 35% of recovery before litigation, 40% through trial, and 45% on appeal. Although there was some dispute as to whether a second page of this contract spelling out allocation of litigation costs was ever signed by Palmer, it is nonetheless clear from the evidence that Palmer agreed to pay these expenses. First, the one page of the contract which was signed provides for a lien in favor of the attorney for expenses paid or incurred by him in the suit against any amount recovered. Second, in post-trial correspondence with Avery, Palmer specifically acknowledged that the litigation expenses were his responsibility. It is also evident that Maria Palmer, his wife and co-plaintiff, acquiesced in this contractual arrangement.
The incident occurred on April 12, 1988, and a five day trial of the matter was held two and one-half years later in October of 1990. The jury returned a verdict in favor of Palmer and his wife for some 3.1 million dollars and judgment for that amount was signed on October 29, 1990. Goudchaux/Maison Blanche thereupon filed in the district court a motion for remittitur, and Avery prepared and filed an opposition to this motion, with a supporting memorandum. The motion was denied by the district judge on November 29, and several days later the department store suspensively appealed the judgment to this court. Avery then filed a motion to test the suspensive appeal bond, which was denied by the trial court without a hearing. The only other action taken by Avery after trial was to order from the court reporter a copy of the trial transcript.
On April 29, 1991, some three weeks after lodging of the record in this court, the Palmers discharged Avery and employed Leon Rittenberg, Jr. to represent them on appeal. Rittenberg filed briefs and argued the matter before this court. In this court's opinion of October 16, 1991, the trial court judgment was reduced to some 2.1 million dollars.
Avery, in response to his discharge, filed a lien on the proceeds of the judgment pursuant to the employment contract, La. R.S. 9:5001, and La.R.S. 37:218. He also sought in the district court judicial recognition of his rights under the contract for a percentage of the proceeds, but this request was rejected by the trial judge as premature because the case was still on appeal and thus subject to reversal. This activity, of course, alerted Goudchaux/Maison Blanche to the existence of a fee dispute. When this court's judgment was issued, this latter party apparently concluded that no further reduction of the award would likely be made by the Louisiana Supreme Court. Therefore, on November 14, 1991, it provoked this concursus proceeding and placed in the registry of the court $2,902,990.36, which included this court's judgment amount of $2,120,700, plus $779,938.26 in judicial interest, and $2,352.10 in costs.
For their part, also on about November 14, the Palmers sought a writ of review in the Louisiana Supreme Court seeking to have the original jury amount re-instated. On January 3, 1992, a motion by the Palmers to release a portion of the deposited funds was heard, but the trial judge denied relief, again on the grounds that the underlying suit was not yet final. However, several days later, on January 6, writs were denied by the Supreme Court. On February 19, 1992, by agreement of the parties, the court released to the Palmers $1,579,729.77, which was about 55% of the funds on deposit. A dispersal of $300,000 was made to Avery on March 24, and the dispute proceeded over the funds remaining in the registry.
Trial of the concursus was held on April 13-14, 1992. After hearing the evidence, *707 the trial judge found that Avery had acted at all times in the Palmers' best interest and that there was no cause for his discharge during the appeal. He also noted that the case involved difficult factual and legal issues, particularly in regard to the liability of the defendant department store. He noted that he was surprised to learn on the morning of trial that the defendant had decided to stipulate to liability, and try the case only as to damages. He explained that he felt that the store security guard was probably acting well within the provisions of La.Code Crim.Pro., art. 215, which permits merchants to use reasonable force to detain persons suspected of shoplifting. Had liability been contested, he intended to instruct the jury as to the provisions of the above article, leaving as the only serious question whether the force used by the guard was reasonable under the circumstances. That Avery was able to convince the defendant that it had little chance of escaping liability, the trial judge attributed to his excellent performance and preparation. As to quantum, the trial judge again found Avery's representation exemplary, and noted that the jury award was probably the highest ever made to an individual plaintiff in Jefferson Parish. He finally pointed out that Palmer acknowledged that he had no complaints about Avery's representation through the trial and post-trial motions.
As to the amount of the fee, the trial judge found it to be reasonable because of the risks involved and the excellent, if not extraordinary, result obtained. He also found that Avery had substantially completed work on the appeal, particularly preparation of the memorandum in opposition to the defendant's motion for remittitur, which would have been in substantial part Avery's appellate brief had he not been discharged. Based on the above findings, the trial judge entered judgment in Avery's favor for the full 45% of recovery as provided in the contract. He also cast the Palmers for some $33,000 in litigation expenses incurred by Avery. Finally, he allowed judicial interest on the fee recovery from April 29, 1991, the date Avery was discharged. The Palmers now appeal.
The major issue before us here is simply whether Avery's contingency fee is excessive on the facts of this case. Rule 1.5(c) of the Rules of Professional Conduct provides that a fee may be contingent upon the outcome of the matter. Our Supreme Court has also approved of contingency fee contracts and routinely held them to be enforceable, see Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979). Nonetheless, such fees are subject to the reasonableness inquiry of Rule 1.5(a)(1-8). As noted above, the trial judge addressed most of the considerations listed in the rule and made factual findings as to these issues. He found the case to involve novel and difficult issues and that Avery had the requisite skill to meet these tasks. (Rule 1.5(a)(1)). Although he made no specific finding as to the time spent on the case, Avery testified that he probably had over 3,000 hours of work in the matter and the trial judge obviously found this figure credible. As to the customary fee, several trial attorneys presented as experts testified that contingency contracts of between 25% and 45% were typical in this area (Rule 1.5(a)(3)). The judge further found that the result obtained was extraordinary. (Rule 1.5(a)(4)). Our review of the record in this matter leaves no doubt that all of these factual findings were amply supported by the evidence. We are of the further opinion that the trial judge correctly concluded that the 40% fee sought by Avery for work performed through trial was reasonable under Rule 1.5 of the Rules of Professional Conduct.
We disagree, however, with the finding that Avery had substantially completed work on appeal, thus entitling him to an additional 5% of recovery. It is obvious to attorneys and the courts that law suits are not easily compartmentalized into discrete segments, and that work done in discovery may eventually be just as important for appellate purposes as work done at trial or in post-trial pleadings. Nonetheless, when a contract with a layman provides an increasing fee schedule for appellate work, that contract must be construed in a manner *708 reasonably related to the trial and appellate processes.
In the present matter, there are apparently no cases which have established a clear demarcation between trial and appellate work in the fee contract context. We therefore resolve the matter based upon the respective jurisdictions of the trial and appellate courts. The record here discloses that the only two acts undertaken by Avery after the actual trial were filing the memorandum in opposition to the remittitur, and a motion to test defendant's suspensive appeal bond. Because both of these matters were within the jurisdiction of the trial, rather than the appellate court, see La.Code Civ.Pro. arts. 1814, 2088(5), we rule that they were not part of the appellate process. We therefore further conclude that these acts did not trigger the additional 5% contractual fee for appellate work in the case, and that the trial judge erred in awarding that additional portion of the fee.
We also find that the trial judge erred in awarding judicial interest on the judgment from April 29, 1991, the date Avery was discharged. As correctly noted by the Palmers here, interest has been accruing on the disputed funds since 1988 when suit was filed. Goudchaux/Maison Blanche paid judicial interest through November 14, 1991, when it deposited the funds into the court registry. Since that deposit, conventional interest is also being earned on the funds owing to Avery which still remain in the registry, La.R.S. 39:1231. In this situation, the Palmers do not have use or possession of the funds, nor is any of the interest being paid to them. An award to Avery of judicial interest on his fee from April 29, 1991, the date of his discharge, would in effect be a windfall to him of interest on interest. It would also constitute a penalty against the Palmers for exercising their unqualified right to discharge their attorney, with or without cause, Saucier v. Hayes Dairy Products, Inc., supra. We therefore vacate that portion of the judgment awarding judicial interest on the judgment from April 29, 1991.
The next issue concerns litigation costs. As already noted, the contract, as well as other evidence, conclusively showed that Palmer agreed to pay litigation costs which eventually amounted to $33,492.69. That same evidence did not, however, show any agreement as to whether the expenses would be deducted from the recovery before calculating the percentage fee, or after. Because Rule 1.5(c) provides that a contingency fee contract shall contain a provision specifying when the expense deduction is to be made, and because the evidence discloses no such clause in the contract at issue, we must construe the fee agreement against the attorney. We therefore rule that the litigation costs are to be deducted from the recovery prior to calculation of the fee.
For the above reasons the judgment is amended to provide that Gregory Avery is entitled to a fee of 40% of those funds placed in the registry of the court by Goudchaux/Maison Blanche, Inc. on November 24, 1991, after deducting therefrom litigation costs of $33,492.69. Although the award of judicial interest is vacated, Avery is nonetheless also entitled to whatever conventional interest accrued to his portion of the funds while in the registry pursuant to La.R.S. 39:1231. This judgment is subject to a credit of $300,000 already withdrawn from the registry by Avery. In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.