D. STEPHEN GUERRANT *et al.*, Plaintiffs-Appellees, v. ROBERT ROTH *et al.*, Defendants (D'Ancona & Pflaum, L.L.C., Appellant).

First District (6th Division)    No. 1—01—3690

Opinion filed September 13, 2002.

260

D'Ancona & Pflaum, L.L.C., of Chicago (Paul E. Freehling, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Dean A. Dickie, of counsel), for appellees.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

The appellant in this case, D'Ancona & Pflaum, L.L.C., (D'Ancona & Pflaum), is a law firm that represented plaintiffs, D. Stephen Guerrant and Marcia Guerrant (the Guerrants), in the underlying litigation from March 1986 through September 2000. D'Ancona & Pflaum appeals from an order of the trial court finding that D'Ancona & Pflaum was entitled to recover only $2,940.92 for its costs and expenses[1] out of the $20,704.91 that it had claimed as costs and expenses. In this appeal, D'Ancona & Pflaum seeks the following expenditures denied by the trial court: computer-assisted legal research charges of $10,348.45 (Westlaw) and $443.83 (LEXIS), photocopy charges of $2,028.61, one court reporter bill in the amount of $100, telephone toll charges of $57.50, and cab fare of $15.[2] The primary issue in this appeal is whether the expenditures denied by the trial court were recoverable pursuant to the terms of the parties' written contingent fee agreement.

## Background

On March 8, 1996, D'Ancona & Pflaum commenced the underlying litigation when the firm filed a complaint on behalf of the Guerrants in the circuit court of Cook County against Vincent & Roth, P.C., an Illinois law firm, and McCoy Real Estate Services, Inc., an Illinois real estate brokerage firm, alleging professional malpractice relating to a real estate claim.[3] D'Ancona & Pflaum, however, did not execute a written agreement with the Guerrants until June 25, 1999. At that time, Mr. Dean Dickie was the lead attorney in the underlying litigation. D'Ancona & Pflaum prosecuted the Guerrants' case from 1996 through June 2000. Mr. Dickie, whose membership with D'Ancona & Pflaum was terminated effective June 30, 2000, took the Guerrants'

---

[1] In addition to this amount, the trial court awarded D'Ancona & Pflaum $45,454.50 as compensation for professional services rendered pursuant to a contingent fee agreement. The parties are not disputing the $45,454.50 portion of the award.

[2] D'Ancona & Pflaum asserts also that the trial court apparently made mathematical errors and further notes that D'Ancona & Pflaum is now abandoning some of its claims for reimbursement, including those expenditures for which the firm was unable to locate backup records.

[3] The underlying litigation involved approximately 270 acres of farm property owned by the Guerrants in Scales Mound, Illinois. The Guerrants retained the defendants to assist them in subdividing and selling the real estate. The Guerrants alleged that the value of the real estate was adversely affected when the Guerrants' attempt to subdivide and sell the real estate failed as a result of defendants' professional negligence.

case with him when he left the firm. He formally substituted as counsel on September 25, 2000. A jury trial on the underlying litigation commenced in November 2000 during which time the case settled for $210,000. As a result of settlement, the trial court entered an order on November 29, 2000, dismissing the case with prejudice. The defendants in the underlying litigation subsequently refused to tender the settlement amount pending the resolution of this dispute that arose between the Guerrants and D'Ancona & Pflaum regarding an attorneys' lien asserted by D'Ancona & Pflaum.

On February 7, 2001, the trial court entered an agreed order whereby it directed the Guerrants to pay D'Ancona & Pflaum $45,454.50 for the professional services rendered, pursuant to the written contingent fee agreement.[4] However, the amount of $20,704.91 for costs and expenses remained in dispute between D'Ancona & Pflaum and the Guerrants. Because the remainder of the disputed sum had dipped below the $30,000 minimum required for law division jurisdiction, the trial court transferred the case to the municipal division, where it was assigned to Judge Robert E. Gordon for further proceedings.[5]

On October 10, 2001, a trial commenced before Judge Gordon. Mr. Dickie represented the Guerrants. After D'Ancona & Pflaum presented its case, Judge Gordon terminated the trial proceedings, called the attorneys into his chambers and rendered his decision. He allowed reimbursement of certain expenditures as set out in some of the trial exhibits. Judge Gordon allowed reimbursement for the entirety of travel expenses of $954.80, but denied cab fare of $15. Judge Gordon denied the remaining expenditures for computer-assisted research, photocopying and telephone charges because they were not expressly provided for in the contingent fee agreement. The basis of the trial court's denial of the remaining expenditure of $100 for one court reporter bill is unclear.

## Standard of Review

■ The parties here disagree on the standard of review that this court should apply. Generally, a trial court's decision to award attorney fees is not reversed absent an abuse of discretion. *Pietrzyk v. Oak Lawn Pavilion, Inc.*, 329 Ill. App. 3d 1043, 1046, 769 N.E.2d 136, 137 (2002). The rationale for this standard is that a party challenging

---

[4]The figure of $45,454.50 represented D'Ancona & Pflaum's share (65%) of the one-third contingent fee in the underlying litigation.

[5]The trial court entered orders whereby the amount of $20,704.91 was deposited in escrow with the clerk of the circuit court and the remainder of the settlement proceeds was distributed.

a trial court's decision regarding attorney fees is actually challenging the trial court's discretion in determining what is reasonable. *Pietrzyk*, 329 Ill. App. 3d at 1046, 769 N.E.2d at 137. In the present case, the trial court's decision to disallow certain expenditures, with the exception of the $15 for cab fare and possibly the $100 court reporter bill, was not premised upon a finding that the expenses were unreasonable. Instead, the trial court concluded that, as a matter of law, the expenditures for computer-assisted legal research, photocopy charges and telephone toll charges were not recoverable because they were not expressly included in the contingent fee agreement. Where the trial court here determined the construction of the contingent fee agreement as a matter of law, we construe the contract unrestrained by the trial court's judgment, and our standard of review is *de novo*. *Pietrzyk*, 329 Ill. App. 3d at 1046, 769 N.E.2d at 136 (applying *de novo* standard of review where plaintiff was not disputing trial court's calculations, but was contending only that trial court misapplied the law); see also *Bank of Ravenswood v. Polan*, 256 Ill. App. 3d 470, 474, 628 N.E.2d 194, 197 (1993) (explaining that where the trial court has determined the construction of a contract as a matter of law, reviewing court applies *de novo* standard on review and construes the contract unrestrained by the trial court's judgment). Thus, as to the trial court's decision to disallow reimbursement for computer-assisted legal research, photocopy charges and telephone toll charges, we agree with D'Ancona & Pflaum that our standard of review is *de novo*. For the remaining expenditures found to be unreasonable by the trial court, we shall apply the abuse of discretion standard proposed by the Guerrants.

## Analysis

■ It is well settled that, when interpreting a contract, a court "should ascertain the intent of the parties and give effect to that intent." *Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 521, 757 N.E.2d 952, 956 (2001). The relevant contractual language provides as follows:

"3. As compensation for professional services rendered, the Guerrants agree to pay the Firm a fee equal to one-third of the total amount of any settlement or judgment in favor of the Guerrants.

4. In addition to the fee specified in Paragraph 3 above the Guerrants agree to pay promptly all customary costs *and* reasonable out-of-pocket expenses incurred by the Firm in its pursuit of the claims covered by this Agreement. *These expenses include* court reporting services, expert witness fees, reasonable travel expenses, if any, fees paid to trial witnesses and the cost to create demonstrative trial exhibits. At the firm's request the Guerrants agree to pay

vendors directly for goods and services provided pursuant to this paragraph." (Emphasis added.)

Both parties assert that the language of the contingent fee agreement is "clear and unambiguous." Nevertheless, each party offers a different interpretation of its meaning. Although a contract is not "ambiguous" merely because the parties disagree as to its meaning, a contract will be deemed ambiguous if its language is susceptible to more than one reasonable interpretation. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 348, 736 N.E.2d 145, 153 (2000); *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 290, 695 N.E.2d 503, 507 (1998). Whether a contract is ambiguous is a matter of law for the court to determine. *Newcastle Properties, Inc. v. Shalowitz*, 221 Ill. App. 3d 716, 728, 582 N.E.2d 1165, 1172 (1991). Thus, we must first examine the language to determine whether an ambiguity exists. The parties disagree on the meaning of the word "include" as it is used in paragraph four of the contingent fee agreement. The issue we must resolve is whether the enumerated items that follow the word "include" are illustrations or limitations.

The Guerrants' position is that the use of the word "include" in paragraph four of the parties' agreement should be interpreted as "include only." Under this interpretation, the word "include" is a term of limitation where that which follows is an exclusive list of expenses that cannot be expanded. D'Ancona & Pflaum asserts that the word "include" in paragraph four is a term of expansion used merely to preface illustrative examples and that what follows is a nonexclusive list of expenses that may be added to, such that the word "include" must be interpreted as "include, but are not limited to." Had the contract expressly contained either the phrase "include only" or "include, but are not limited to," the agreement would be unambiguous.

■ It has been recognized before by this court, in a contract situation, that the word "includes" may be susceptible to competing reasonable interpretations. *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 373, 714 N.E.2d 559, 564 (1999). In the present case, we conclude that each party's interpretation of the word "include" is a reasonable one. The existence of these two reasonable interpretations of the word "include" creates an intrinsic or patent ambiguity in the agreement. Having determined that the contingent fee agreement is facially ambiguous, we must next determine how to resolve the ambiguity.

■ In *Pekin*, this court was interpreting an insurance policy. Illinois law governing the construction of insurance contracts dictates that ambiguous policy terms must be construed in favor of the policyholder. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*,

154 Ill. 2d 90, 119-21, 607 N.E.2d 1204 (1992). Therefore, after concluding that the word "includes" had two reasonable interpretations, we construed the provision in favor of the insured. *Pekin Insurance Co. v. Benson,* 306 Ill. App. 3d 367, 373, 714 N.E.2d 559, 564 (1999). The Illinois Supreme Court has reiterated the principle that any ambiguous language in a contract must be resolved against the drafter of the disputed provision. *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill. 2d 460, 693 N.E.2d 358 (1998); *Duldulao v. Saint Mary of Nazareth Hospital Center,* 115 Ill. 2d 482, 493, 505 N.E.2d 314 (1987). Although our research has disclosed no Illinois case that has squarely dealt with the issue of the construction of an ambiguous contingent fee agreement in a fee dispute between an attorney and a client, we believe that the rule that ambiguities in a contract are to be construed against the drafter is particularly applicable to a contingent fee agreement drafted by an attorney.

In the context of a disciplinary proceeding, the Illinois Supreme Court concluded that a hearing panel had properly found that the terms of a contingent fee agreement did not entitle an attorney to a fee. *In re Teichner,* 104 Ill. 2d 150, 470 N.E.2d 972 (1984). In so doing, the court stated as follows:

> "Given the fact that the unquestioned, routine payment here does not come within the normal definitions of a settlement, and did not result from a judgment, *and that ambiguities are to be construed against the drafter* [citations], we cannot disagree with the panel's finding that the terms of the [contingent fee] contract do not entitle respondent to a fee." (Emphasis added.) *In re Teichner,* 104 Ill. 2d at 160, 470 N.E.2d at 977.

There is authority in other jurisdictions that obscurities or ambiguities in contingent fee agreements between an attorney and a client should be construed against the attorney as the drafter of the agreement. See, *e.g., Grace & Nino, Inc. v. Orlando,* 41 Mass. App. Ct. 111, 114, 668 N.E.2d 864, 866 (1996); *Untiedt v. Grand Laboratories, Inc.,* 552 N.W.2d 571, 574 (Minn. App. 1996); *Cohen v. Radio-Electronics Officers Union, District 3,* 146 N.J. 140, 679 A.2d 1188 (1996); *Palmer v. Goudchaux/Maison Blanche, Inc.,* 613 So. 2d 704, 708 (La. App. 1993); *Benalcazar v. Goldsmith,* 400 Mass. 111, 114, 507 N.E.2d 1043, 1045 (1987); *Shaw v. Manufacturers Hanover Trust Co.,* 68 N.Y.2d 172, 499 N.E.2d 864, 507 N.Y.S.2d 610 (1986); *Lane v. Wilkins,* 229 Cal. App. 2d 315, 40 Cal. Rptr. 309 (1964).

In *Shaw,* the court stated that "courts as a matter of public policy give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, *and fully*

*known and understood by their clients.*" (Emphasis added.) *Shaw*, 68 N.Y.2d at 176, 499 N.E.2d at 866, 507 N.Y.S.2d at 612. After determining that both parties' interpretations of the language of a retainer agreement were reasonable, the court explained that the law required that the agreement between client and attorney be construed most favorably for the client. *Shaw*, 68 N.Y.2d at 177, 499 N.E.2d at 866, 507 N.Y.S.2d at 612. The court, noting that it was not insensitive to the attorneys' loss of a substantial portion of their fee, nonetheless explained that "it is essential that the terms of representation *** be set down with clarity. And the onus is upon the lawyers who draft such agreements to do so." *Shaw*, 68 N.Y.2d at 179, 499 N.E.2d at 868, 507 N.Y.S.2d at 614.

In *Cohen*, a New Jersey court, quoting Restatement of Law Governing Lawyers § 29A comment *h* (Proposed Final Draft No. 1, 1996), explained the reasons for construing agreements between lawyers and clients against the lawyer as follows:

" 'Three reasons support this rule. First, lawyers almost always write such agreements ... and an agreement traditionally is interpreted against its author. Second, lawyers are more able than most clients to detect and repair omissions in client-lawyer agreements. Third, lawyers have a fiduciary obligation to inform clients about the risks of the representation, including those unresolved by the client-lawyer agreement.' " *Cohen*, 146 N.J. at 156, 679 A.2d at 1196.

In *Untiedt*, the Minnesota Court of Appeals noted that the application of the rule that an ambiguous agreement should be construed against the drafter is particularly appropriate when interpreting a contingent fee agreement. An earlier Minnesota case had also recognized the principle of construing ambiguous contingent fee agreements against their drafters, but had relied on the attorney's sophistication and fiduciary status as the reason to favor an interpretation that comports with the client's expectations. *Cardenas v. Ramsey County*, 322 N.W.2d 191, 193-94 (Minn. 1982).

With respect to contingent fee agreements, because attorneys and their clients generally do not have equal bargaining power, clients consequently need protection from the courts. Contingent fee agreements between an attorney and client are subject to certain requirements, as well as a court's supervision. Thus, courts have the inherent power to supervise contingent fee agreements. See, *e.g.*, *In re Doyle*, 144 Ill. 2d 451, 463, 581 N.E.2d 669, 674 (1991) (explaining that although a contingent fee agreement may be valid at the time of its formation, court still has a duty to safeguard the public from the collection of an excessive fee); *In re Teichner*, 104 Ill. 2d 150, 160-61, 470

N.E.2d 972, 977 (1984) (same); *Bernier v. Burris*, 113 Ill. 2d 219, 250, 497 N.E.2d 763, 778 (1986) (acknowledging "established authority of the courts to supervise contingent-fee arrangements"); *Pocius v. Halvorsen*, 30 Ill. 2d 73, 83, 195 N.E.2d 137, 142 (1963) (pronouncing that the reasonableness of contingent fee agreements is always subject to the supervision of the court). Thus, we construe the contingent fee agreement strictly against D'Ancona & Pflaum in concert with our inherent power to supervise the reasonableness of a contingent fee agreement. In the instant case, we are not considering whether the expenditures were reasonable in terms of their amount, but whether they were recoverable in the first instance.

We first address D'Ancona & Pflaum's request for reimbursement of computer-assisted legal research, which calls for a different analysis from that of the other claimed expenses. Although D'Ancona & Pflaum argues that the expenditures for this research are reimbursable pursuant to paragraph four of the contingent fee agreement, which covers "costs" and "expenses," the Guerrants contend that computer-assisted legal research is included in the attorney's fee for legal services, particularly where, as here, the agreement contains no express provision for the payment of computer-generated legal research charges. We agree.

Attorney fees are an attorney's compensation for professional services rendered. In the present case, paragraph three of the written contingent fee agreement provided for the compensation for professional services rendered. Thus, paragraph three of the contingent fee agreement here, and not paragraph four, covers attorney fees, including computer-assisted legal research. As compensation for professional services rendered, the Guerrants agreed to pay a fee equal to one-third of the total amount of any settlement or judgment in their favor. Contractual provisions for attorney fees are strictly construed, and fees cannot be recovered for any services unless they are provided for by the specific terms. *Wheeling Trust & Savings Bank v. Citizens National Bank of Downers Grove*, 142 Ill. App. 3d 333, 339, 491 N.E.2d 866, 870 (1986). Neither paragraph three nor any part of the agreement contains any language relating to computer-assisted legal research.

This court has briefly addressed the issue of reimbursement for computer-assisted legal research, but it was not in the context of a contingent fee agreement. In *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 518 N.E.2d 424 (1987), the court disallowed reimbursement for computerized legal research charges because they were unsubstantiated. In apparent reliance on *Kaiser*, the court in *Harris Trust & Savings Bank v. American National Bank & Trust Co.*

*of Chicago*, 230 Ill. App. 3d 591, 599-600, 594 N.E.2d 1308, 1315 (1992), did not expressly determine that the computer-assisted research charges were unsubstantiated, but nonetheless held that the costs of computerized research were not recoverable. It appears that the *Harris* court misconstrued *Kaiser* as holding that such expenses were more properly characterized as office overhead. In actuality, however, the *Kaiser* court agreed with the trial court that "under the reasoning in *Losurdo Brothers v. Arkin Distributing Co.*, 125 Ill. App. 3d 267, 465 N.E.2d 139 (1984), the 'costs' of photocopying, check processing, legal newspaper subscriptions, telephone and delivery services and the like are, more accurately, ordinary 'expenses' which are normally included in office overhead and, in turn, encompassed within the hourly attorney fee rate charged by the firm." *Kaiser*, 164 Ill. App. 3d at 989, 518 N.E.2d at 431. The *Kaiser* court, having previously determined that the computer-assisted legal research charges were unsubstantiated, did not include this item in its discussion of those expenses that constitute office overhead. *Kaiser*, 164 Ill. App. 3d at 989, 518 N.E.2d at 431. Moreover, the *Kaiser* court cited, but did not further discuss, *Bennett v. Central Telephone Co. of Illinois*, 619 F. Supp. 640 (N.D. Ill. 1985), which was a federal case in which the court did allow reimbursement of computer-assisted legal research charges *in addition to* the fees charged for the time of the attorney who conducted the research. *Kaiser*, 164 Ill. App. 3d at 989, 518 N.E.2d at 431.

More recently, federal courts in Illinois have more thoroughly addressed the issue of reimbursement of computer-assisted legal research charges. See, *e.g.*, *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000); *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994). The *Haroco* court explained that the added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Thus, such expenses that are merely a substitute for an attorney's time are part of the attorney fee. The *Haroco* court thus held that costs associated with computer-assisted legal research were not separately recoverable as an element of court costs. D'Ancona & Pflaum contends that *Haroco* is inapposite because there the court was engaging in statutory construction of the word "costs." This is a distinction without a difference in terms of the reasoning as to why computer-assisted legal research charges constitute "attorneys fees."

■ D'Ancona & Pflaum has already been compensated for its attorney fees, as provided for under paragraph three of the parties' agreement. Similar to most contingent fee agreements, the parties'

agreement used a percentage-of-recovery method, *i.e.*, one-third of the total of any settlement or judgment. As the Seventh Circuit recently explained, when a court uses a percentage-of-recovery method of calculating attorney fees, computer-assisted legal research charges are simply subsumed in the award of attorney fees. *Montgomery*, 231 F.3d at 409; see also *In re Estate of Sykes*, 161 Misc. 2d 978, 615 N.Y.S.2d 825 (1994) (explaining that there is no basis to allow counsel to be compensated for computer-assisted research in contingent fee cases). D'Ancona & Pflaum claims that *Montgomery* is distinguishable "because the fees and expenses [to be awarded class counsel] were to be derived from a common fund" and thus the rules applicable to common funds, and not the rules applicable to contract construction, were used. This is another distinction without a difference. Whether the percentage-of-recovery method for determining attorney fees arises out of the common fund doctrine or the parties' contractual agreement is irrelevant. The point is that computerized assisted legal research charges are a part of attorney fees and D'Ancona & Pflaum has already been compensated for the computer research charges it incurred through the attorney fee awarded it. In the contingent fee arrangement here, any time saved by computer-assisted legal research inured solely to the attorney, not the client. We conclude that the trial court correctly denied D'Ancona & Pflaum's request for reimbursement of its computer-assisted legal research charges.

We hold, therefore, that the computer-assisted legal research expenses are a form of attorney fees and are not separately recoverable as a cost or expense pursuant to the parties' contingent fee agreement. We express no opinion, however, as to whether computer-assisted legal research expenses are ever separately recoverable in a contingent fee agreement. See, *e.g.*, *Louisiana State Bar Ass'n v. Edwins*, 540 So. 2d 294 (La. 1989) (holding that client who has retained lawyer on contingent fee basis may be billed for computer-assisted legal research only when agreement explicitly provides that such costs will be billed, agreement includes detailed and complete explanation of nature of computerized research, and client consents).

■ We next consider the remaining expenses, which include photocopy charges, telephone toll charges, cab fare and a court reporter charge. Because we are construing the contingent fee agreement against D'Ancona & Pflaum, we conclude that the expenditures for photocopy charges and telephone toll charges were properly denied

by the trial court because they were not expressly provided for in paragraph four of the contingent fee agreement.[6]

Further support for our construing ambiguities regarding recoverable expenses against D'Ancona & Pflaum comes from Rule 1.5(c) of the Illinois Rules of Professional Conduct, which governs contingent fee agreements, and states as follows:

> "A contingent fee agreement shall be in writing and *shall state* the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, *litigation and other expenses* to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated." (Emphasis added.) 134 Ill. 2d R. 1.5(c).

The Illinois Supreme Court has explained that the writing requirement of Rule 1.5(c) is mandatory and contains no exception. *In re Spak*, 188 Ill. 2d 53, 67, 719 N.E.2d 747, 754 (1999). Thus, the court made clear that an attorney may not "wait to reduce a contingent fee to writing until after the work is done and the attorney is in possession of the proceeds of litigation." *Spak*, 188 Ill. 2d at 67, 719 N.E.2d at 754. As the court explained:

> "A client in such a situation may be left with the unenviable choice of agreeing with his attorney's recollection of the fee agreement, *or delaying receipt of his money pending resolution of a fee dispute.* The inequality of bargaining power between the attorney and client in such a case is readily apparent."(Emphasis added.) *In re Spak*, 188 Ill. 2d at 67, 719 N.E.2d at 754-55.

We are now faced here with precisely the kind of dispute Rule 1.5 was designed to prevent. Although the court in *Spak* was focusing on the requirement that an attorney put the contingent fee agreement in writing in the first instance, the principle of preventing a fee dispute is just as relevant to the requirement that in a contingent fee agreement an attorney state with clarity those expenses the client will be responsible for.

Paragraph four of the written contingent fee agreement refers to "customary costs *and* reasonable out-of-pocket expenses." (Emphasis added.) The agreement does not define "costs" or "customary costs."[7] D'Ancona and Pflaum does not distinguish costs from expenses, nor

---

[6]We note that even if the previously discussed computer-assisted legal research charges were not attorney fees but instead were "expenses" as they are characterized by D'Ancona & Pflaum, another basis for why they are not recoverable is that these charges were not expressly provided for anywhere in the contingent fee agreement.

[7]We believe that the term "customary" costs, as used here without any

address the fact that "costs" is qualified by the adjective "customary" and "expenses" is qualified by the adjective "reasonable." In *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 757 N.E.2d 1271 (2001), this court explained, where the term "expenses" was used in addition to the term "costs," it is presumed that the language is not employed idly. *J.B. Esker*, 325 Ill. App. 3d 276, 757 N.E.2d 1271. The court in *J.B. Esker* thus distinguished the term "expenses" from "costs" and engaged in an analysis of the term "expenses." The court in *J.B. Esker* ultimately concluded that reasonable expert witness fees were part of the "expenses" provision in a fee-shifting clause that entitled the prevailing party to reimbursement of costs and expenses. Relying on *J.B. Esker*, D'Ancona & Pflaum now argues that the term "expense" in contracts between attorneys and clients refers to recoverable disbursements made by attorneys that are usual and reasonably necessary to carry out their employment. The Guerrants contend that D'Ancona & Pflaum's reliance on *J.B. Esker* is misplaced and this court agrees.

As part of its analysis, the *J.B. Esker* court, citing portions of *Corpus Juris Secundum* (C.J.S.), discussed the term "expenses" and reimbursement for them in the context of fee agreements between attorneys and their clients. The court noted as follows:

> "[C.J.S.] uses the term 'expenses' when explaining the reimbursement to which an attorney is entitled: 'Reimbursement for Expenses [—]*In the absence of a contract* or custom to the contrary, the attorney may recover disbursements made by him which were usual and reasonably necessary to carry out his employment.' 7A C.J.S. *Attorney & Client* § 298, at 558 (1980). The employment of an attorney gives the attorney the implied authority to bind the client for the payment of the fees of expert witnesses as a part of the expenses and services properly and reasonably incurred in conducting the case. 7A C.J.S. *Attorney & Client* § 212 (1980). A client entering into a contract whereby he agreed to pay for 'expenses' would, therefore, be obligated to pay the fees of an expert witness if the witness was usual and reasonably necessary to carry out the litigation." (Emphasis added.) *J.B. Esker*, 325 Ill. App. 3d 276, 286, 757 N.E.2d 1271, 1280 (2001).

We first note that this passage was mere *dicta*. Moreover, the court in *J.B. Esker* was not construing an ambiguous contingent fee agreement between a law firm and a client where, as here, the agreement specifically listed expenses that were in addition to the customary costs and attorney compensation.

---

definition means court costs such as process server fees and filing fees customarily charged by the court.

Interestingly, section 298 of volume 7A of C.J.S. specifically discusses expenses in the context of a contingent fee agreement as follows:

> "Where an attorney's retainer agreement entitles him to a percentage of the recovery, but makes no provision regarding disbursements, he is entitled to all proper disbursements in addition to the fee, since the law implies a promise by the client to repay expenses in addition to what was promised in the retainer agreement." 7A C.J.S. *Attorney & Client* § 298 (1980).

Although this language lends even more support to D'Ancona & Pflaum's position, we find no support for this principle under Illinois law. In fact, this principle of an implied promise is in direct conflict with the requirement in Rule 1.5(c) of the Illinois Rules of Professional Conduct that a contingent fee agreement shall be in writing and state "litigation and other expenses to be deducted from the recovery." 134 Ill. 2d R. 1.5(c). Although these mandatory requirements refer to an attorney's professional duties, we nonetheless conclude that, under Illinois law, there can be no resort to the "implied promise" discussed by C.J.S.

We conclude, as did the trial court, that the only "expenses" that were recoverable under the terms of the contingent fee agreement were "court reporting services, expert witness fees, reasonable travel expenses, if any, fees paid to trial witnesses and the cost to create demonstrative trial exhibits," which were expressly listed in paragraph four. Therefore, the trial court properly denied D'Ancona & Pflaum's request for reimbursement of telephone toll charges of $57.50 and photocopy charges of $2,028.61. In view of our conclusion, we need not address the Guerrants' contention that, pursuant to *Kaiser*, photocopy charges are general overhead office expenses that are incorporated into the hourly attorney fee charged to the client and, accordingly, cannot be separately itemized and charged as costs in an action for attorney fees. *Kaiser*, 164 Ill. App. 3d at 989, 518 N.E.2d at 431.

■ We now address the remaining charges for cab fare and a court reporter bill. Since paragraph four specifically listed reasonable travel expenses and court reporting services as expenses the Guerrants were responsible for, these expenses shall be addressed separately. The transcript of the hearing below shows that the basis for denial of the cab fare, unlike the other expenses, was the trial court's exercise of discretion and a determination that the expenditure was not reasonable. Thus, we review the decision as to these expenses using the previously mentioned abuse of discretion standard. *Pietrzyk v. Oak Lawn Pavilion, Inc.*, 329 Ill. App. 3d 1043, 1046, 769 N.E.2d 136, 137 (2002).

The trial judge found that "the fact that counsel was pregnant and she needed a cab does not mean that the client has to pay for the cab." D'Ancona & Pflaum has not addressed this particular expense in its brief. Thus, it has failed to meet its burden of showing why the trial court's decision regarding reimbursement for the cab fare was incorrect. Moreover, D'Ancona & Pflaum has not specifically addressed the trial court's decision regarding the court reporter fee of $100. As to D'Ancona & Pflaum's contentions regarding the trial court's purported mathematical errors, the record indicates that the issue was not raised below by either party to afford the trial court the opportunity to correct any purported mathematical errors in calculations. We have previously held that because the determination of reasonable attorney fees rests in the sound discretion of the trial court, "[e]ven where the trial court has, in its calculations, included improper fees or excluded recoverable fees, this court will not disturb the judgment unless 'the total fees and costs awarded *** was [so excessive or] so inadequate as to amount to a clear abuse of discretion by the court.' [Citation.]" *Sampson v. Miglin*, 279 Ill. App. 3d 270, 281, 664 N.E.2d 281, 288 (1996). Accordingly, we shall not disturb the trial court's decision as to these expenses.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.