## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  October 23, 2014           516471
_____

In the Matter of the Estate of
    IRIS H. BENWARE, Deceased.

BARBARA BURT, as Coexecutor
    of the Estate of IRIS H.
    BENWARE, Deceased,
                    Respondent;

BETTYANN BENWARE O'BRIEN,                MEMORANDUM AND ORDER
    Individually and as
    Coexecutor of the Estate of
    IRIS H. BENWARE, Deceased,
                    Appellant.

RICHARD D. WICKERHAM,
                    Respondent.
_____

Calendar Date:   September 10, 2014

Before:  Lahtinen, J.P., McCarthy, Rose, Lynch and Devine, JJ.

_____

        McNamee, Lochner, Titus & Williams, PC, Albany (Richard D.
Cirincione of counsel), for appellant.

        Corrigan, McCoy & Bush, PLLC, Rensselaer (Peter J. Corrigan
of counsel), for Barbara Burt, respondent.

        Richard D. Wickerham, Schenectady, respondent pro se.

_____

McCarthy, J.

Appeals (1) from an order of the Surrogate's Court of Albany County (Doyle, S.), entered August 1, 2011, which, among other things, granted Richard D. Wickerham's motion to strike a notice of deposition issued by respondent, and (2) from an amended decree of said court, entered June 11, 2012, which determined the amount of counsel fees due to Wickerham.

Petitioner and respondent are sisters and coexecutors of the estate of their deceased mother, who wrote a will leaving each daughter an equal share of the residuary estate. In 2007, the sisters retained Richard D. Wickerham to serve as counsel for the estate. They agreed upon little else. Two years later, petitioner commenced proceedings seeking an accounting of the estate (see SCPA 2208) and a determination of Wickerham's compensation for legal services (see SCPA 2110). Surrogate's Court approved the accounting, fixed counsel fees at $58,000 plus expenses and determined that respondent should be charged 20% of this fee from her share of the residuary estate. Respondent appealed. This Court affirmed the determination to hold respondent responsible for 20% of the counsel fees, but remitted for a redetermination of the amount of those fees (86 AD3d 687, 688-689 [2011]). Upon remittal, respondent sought to depose Wickerham and petitioner, but they moved to strike the notices of deposition. Surrogate's Court granted those motions. Redetermining the amount of counsel fees, the court found that Wickerham was entitled to $50,000. Respondent appeals.

Initially, although the notice of appeal lists the order striking the deposition notices, respondent does not squarely address that order or issue on appeal. Thus, any claims concerning that order have been abandoned (see Matter of Moore v Fink, 77 AD3d 1204, 1205 n [2010]; Matter of Eck v Eck, 57 AD3d 1251, 1252 n 2 [2008]).

Surrogate's Court abused its discretion in fixing Wickerham's fee at $50,000. Surrogate's Court is vested with broad discretion to fix the reasonable compensation of an attorney who renders legal services to a fiduciary of an estate, subject to modification only where that discretion has been

abused (see SCPA 2110; Matter of Cohen, 52 AD3d 1080, 1081 [2008]; Matter of Rockefeller, 44 AD3d 1170, 1172 [2007]).  While the court is not bound by a retainer agreement when determining whether an unreasonable fee must be restricted (see Matter of Middagh, 267 AD2d 593, 593 [1999]; Matter of Verplanck, 151 AD2d 767, 767 [1989]; see also Matter of Rose BB., 35 AD3d 1044, 1046 [2006], appeal dismissed 8 NY3d 936 [2007]), a court "cannot award legal fees in excess of what has been agreed to by the parties in a retainer agreement" (86 AD3d at 689 n 4).  The attorney seeking fees bears the burden of establishing the reasonable value of the services rendered (see Matter of Middagh, 267 AD2d at 594; Matter of McCann, 236 AD2d 405, 406 [1997]).

The one-page retainer agreement here provides for a base legal fee of 5% of the total taxable value of the estate, plus expenses.  Petitioner, respondent and Wickerham all agree that he is entitled to at least that amount ($19,753.79 plus expenses); respondent alone contends that Wickerham is entitled to no more. The agreement provides for additional fees to Wickerham from the estate, "[s]hould extenuating circumstances occur."  The term extenuating circumstances is defined as "[i]ncluding, but not limited to, complex taxation matters, real estate matters and estate litigation.  Consultation and pre-approval will be first sought and secured."  On the prior appeal, this Court found that the record did not support a determination that extenuating circumstances were encountered so as to exceed the 5% fee in the retainer agreement, noting that Wickerham did not identify which legal services justified an additional fee, and he "did not claim that he consulted with the executors or sought their approval prior to providing these additional legal services to the estate" (86 AD3d at 688).  We remitted for Surrogate's Court to determine if such services were actually rendered, whether a reasonable fee was charged for any such services and, if so, whether the executors gave prior approval as required by the retainer agreement (id. at 688-689).

On remittal, which was solely to address Wickerham's fees, he did not request a hearing, instead permitting Surrogate's Court to render a determination based on the papers submitted. Wickerham, once again, did not identify which legal services were justified by extenuating circumstances, nor did he clearly

address the other issues we previously described as lacking adequate proof.

Assuming, without deciding, that extenuating circumstances existed due to respondent's obstructionist behavior and the litigation that was necessary mainly because of the parties' inability to cooperate,[1] the record lacks proof of consultation and approval as required by the retainer agreement. Wickerham and petitioner's counsel averred that Wickerham informed the parties and Surrogate's Court regarding all of his legal services and, when disagreements arose, he would proceed with the approval of one executor and, upon notice, direction or approval from the court. When attempting to determine whether these actions were sufficient, however, we note that the approval sentence in the retainer agreement is ambiguous. It could be interpreted as meaning that Wickerham needed to consult with and obtain approval from the executors for all legal work and, once approved and performed, he could bill it as being based on extenuating circumstances if they occurred. Or it could mean that, prior to rendering additional services, he needed to inform the executors that those specific services would fall within the definition of extenuating circumstances and would, therefore, be considered in addition to his base fee for billing purposes, such that the executors could make an informed decision knowing the costs involved in approving those additional services. "The general rule that 'equivocal contracts will be construed against the drafters' is subject to particularly rigorous enforcement in the context of attorney-client retainer agreements," such that we must construe the agreement in the light most favorable to the clients (Albunio v City of New York, 23 NY3d 65, 71 [2014], quoting Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986]; see Jacobson v Sassower, 66 NY2d 991, 993 [1985]; Ruthman, Mercadante & Hadjis, P.C. v Nardiello, 16 AD3d 815, 817-

---

[1] Due to the retainer agreement's definition of extenuating circumstances, and the unfortunately not-so-rare scenario where coexecutors regularly cannot agree or cooperate, we are not particularly persuaded by the argument that the disputes between the executors here and Wickerham's difficulty in attempting to help them reach decisions constituted extenuating circumstances.

818 [2005]).

While Wickerham diligently kept the parties informed of his work on behalf of the estate, the record does not indicate that he identified any of his services as being necessitated by extenuating circumstances such that they would result in additional counsel fees.[2]  Some of his conference outlines and correspondence generally caution respondent that her behavior may result in increased counsel fees, but – viewing the retainer agreement in petitioner's and respondent's favor – this falls short of meeting the retainer agreement's condition of consultation and preapproval for specific services to be rendered based on extenuating circumstances.  Inasmuch as Wickerham failed to meet his burden of showing that he consulted with the coexecutors and obtained their preapproval before he rendered legal services that were necessitated by extenuating circumstances, which would entitle him to additional counsel fees, Surrogate's Court abused its discretion in finding that he was entitled to such additional fees.  Accordingly, we modify by fixing Wickerham's counsel fees at the base fee in the retainer agreement, namely $19,753.79 (5% of the total taxable estate value) plus expenses.

Lahtinen, J.P., Rose, Lynch and Devine, JJ., concur.

---

[2]  Wickerham asserts that preapproval was not realistically obtainable from respondent because she was obstructing the administration of the estate, so he should be relieved of that condition.  Even if that assertion could be accepted as true, the record does not indicate that Wickerham ever informed petitioner that any of his services would result in a higher fee and sought at least her approval with that knowledge.

ORDERED that the order is affirmed, without costs.

ORDERED that the amended decree is modified, on the law and the facts, without costs, by reducing Richard D. Wickerham's counsel fees to $19,753.79, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court